LOUIS M. BUBALA III, ESQ.
Nevada Bar No. 8974
ARMSTRONG TEASDALE LLP
50 West Liberty Street, Suite 950
Reno, NV 89501
Telephone:  (775) 322-7400
Facsimile:  (775) 322-9049
Email:  lbubala@armstrongteasdale.com

Counsel for Tom Gonzales

ELECTRONICALLY FILED ON
AUGUST 9, 2011

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DESERT OASIS APARTMENTS, LLC,<br><br>Debtor. | Case No. BK-S-11-17208-BAM<br><br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR ORDER (1) APPROVING ADEQUACY OF DISCLOSURES IN PROPOSED DISCLOSURE STATEMANT AND (2) SETTING A CONFIRMATION HEARING, RECORD DATE AND DEADLINES FOR BALLOTING AND OPPOSITIONS TO CONFIRMATION**<br><br>Hearing Date: August 23, 2011<br>Hearing Time: 10:00 a.m. |

Creditor Tom Gonzales opposes Debtor's motion to approve the disclosure statement (Ct. Dkt. #58, filed June 24, 2011).  Mr. Gonzales asserts that the disclosure statement does not satisfy 11 U.S.C. § 1125(a)-(b) with adequate information.  Namely, the disclosure statement does not properly characterize the factual or legal issues underlying his claim and related issues in the case.  To be sure, the parties' rights are disputed and are currently subject to determination in litigation in *Gonzales v. Desert Land, LLC (In re Specialty Trust, Inc.)*, Adv. Pro. 11-5015-GWZ (Bankr. D. Nev.).

Mr. Gonzales requests the disclosure statement be modified to correct and supplement the information about Debtor's assets, prior conduct, and Mr. Gonzales' claim.  He is willing to work with Debtor to provide the additional necessary language prior to distribution of the disclosure statement and plan to creditors.

Mr. Gonzales limits his objection here to the requested supplement of the record.  He reserved the right to contest the plan with additional factual and legal arguments.  This brief should not be considered a concession of any facts or claims made by Debtor, nor should it be a limitation to any additional facts or claims pursued by Mr. Gonzales.

**A.  Mr. Gonzales' rights and the current litigation arise from Debtor's prior bankruptcy**

In 2002, Debtor and two affiliates filed Chapter 11 bankruptcy petitions.  *In re Desert Land, LLC*, Case No. BK-S-02-16202-RCJ (Bankr. D. Nev.), lead case for joint administration of *In re Desert Oasis Apartments, LLC*, Case No. BK-S-02-16204-RCJ, and *In re Desert Ranch, LLC*, Case No. BK-S-02-16205-RCJ.

Judge Jones confirmed Desert Land's plan and dismissed the cases of Desert Oasis Apartments and Desert Ranch.  Mr. Gonzales received what is commonly referred to as the Parcel A Transfer Fee.  This entitled him to payment of $10-million upon the sale, transfer or conveyance of Parcel A.  The confirmation order also contained a subordination provision as to Mr. Gonzales' rights, purportedly as part of a negotiated settlement agreement between Mr. Gonzales and Debtor.  The Bankruptcy Appellate Panel reversed and struck the subordination provision because it was not part of the agreed upon settlement terms.  *Gonzales v. Desert Land, LLC (In re Desert Land, LLC)*, Case No. NV-03-1255-KRyB (BAP 9th Cir. March 31, 2004) (mem.) (on file with the Court as Ex. F to Desert Land's Motion to Withdraw the Reference, Ct. Dkt. #10 in *Gonzales v. Desert Land, LLC (In re Specialty Trust, Inc.)*, Adv. Pro. 11-5015-GWZ (Bankr. D. Nev.)).  The Ninth Circuit affirmed the removal of the subordination provision.  *Desert Land, LLC v. Gonzales (In re Desert Land, LLC)*, Case No. 04-16005 (9th Cir. Oct. 25, 2005) (mem.) (Desert Land Ct. Dkt. #320, filed Nov. 29, 2005).

Mr. Gonzales alleges in his litigation that the obligation to pay the Parcel A Transfer Fee has been triggered.  He alleges that the payment was triggered by the transfer of an option to Desert Oasis Investments, LLC.  Mr. Gonzales also asserts upon information and belief, to be added as amendment to the current complaint, that payment of the Parcel A Transfer Fee also has have been triggered by a prior or existing lease of the property or will be triggered by a pending or contemplated lease.

**B. The Disclosure Statement contains errors and omissions the effect analysis of the plan**

Below are certain specific objections to language in the disclosure statement.

1. Debtor asserts that the settlement agreement in the prior bankruptcy cases provided that "Gonzales would extinguish his note, reconvey his deed of trust, and release Desert Ranch's guarantee and pledge so that Desert Land would own 100 percent of Parcel 'A'" (Ct. Dkt. #56, D/S at 5:22-24). This is incorrect. The settlement was premised upon the reconveyance of the Mr. Gonzales' $41.5 million deed of trust, in conjunction with his return of his 5.5% fee interest in Desert Land and Desert Oasis' portions of Parcel A, as the Gonzales Deed of Trust was also a lien against the Desert Oasis' portion of Parcel A. As a result, the settlement agreement provided that Desert Land <u>and</u> Desert Oasis owned 100% in their respective portions of Parcel A (*see* Ct. Dkt. #56, D/S at 4:10-19, describing pre-settlement arrangements).

2. Debtor omitted additional term of the settlement (Ct. Dkt. #56, D/S/ at 6:6). As additional consideration for Mr. Gonzales' release of his note and deed of trust, he received the rights that would result in payment to the Parcel A Transfer Fee upon the occurrence of certain triggering events on any part of Parcel A, whether owned by Desert Oasis or Desert Land.

3. Debtor inaccurately describes the agreed-to subordination under the settlement agreement (Ct. Dkt. #56, D/S at 6:8-10). The agreement discussed was a separate interim agreement wherein the Mr. Gonzales' deed of trust would be subordinated to a loan for interim purposes pending the completion of settlement of documentation and the actual reconveyance of the his deed of trust. Any implication that this was an agreement to subordinate beyond interim financing pending the completion of the settlement documentation is an incorrect implication. This is substantiated by the transcript from the court hearings on January 31, 2003 (Desert Land Ct. Dkt. #139, filed Feb. 25, 2003).

///

///

///

1       4. Debtor incorrectly states that Desert Ranch received a portion of Parcel A under the settlement agreement (Ct. Dkt. #56, D/S/ at 6:11-13).  Desert Ranch did not own, and does not own, any portion of Parcel A (Desert Land Ct. Dkt. #189, Order Confirming Second Amended Plan, filed April 21, 2003).

      5. Debtor incorrectly and inappropriately expresses its opinion by claiming that subordination is not even required since Mr. Gonzales had no lien on Parcel A, having reconveyed the deed of trust in the settlement (Ct. Dkt. #56, D/S at 7:5-7).  It is contrary to the confirmation order and plan, which specifically required the reconveyance of Mr. Gonzales' deed of trust, which secures his note, and specifically provided that:

> "The Parcel A Transfer Fee shall be evidenced by the Parcel A Memorandum, which shall not, however, constitute a mortgage, deed of trust or other lien on Parcel A, and payment thereof shall be subordinate to any Parcel A Permitted Financing.  Gonzales will subordinate his rights to the payment of the Parcel A Transfer Fee to any such Parcel A Permitted Financing, and shall execute, acknowledge, and deliver, from time to time, upon no less than 20 days written notice to Gonzales, such subordination agreement(s) as may be reasonably required by the title insurer insuring the liens or the security interests related to the permitted Parcel A Financing.

(Desert Land Ct. Dkt. #189, filed Apr. 21, 2003 at 5:22 to 6:2).  Debtor's statement is only offered as an opinion.  It is not supported by the actual language of Desert Land's plan, which dealt with the Mr. Gonzales' rights in Parcel A and the subordination of his interests or rights in Parcel A.  This was separate from the reconveyance of Mr. Gonzales' deed of trust.

      6. The Disclosure Statement omits that the Desert Land confirmation order specifically dismissed the Chapter 11 bankruptcy proceedings of Desert Apartments and Desert Ranch (Desert Land Ct. Dkt. #189, filed Apr. 21, 2003 at 4:21-22), and that an subsequent order was entered dismissing both cases (Desert Land Ct. Dkt. #290, filed June 23, 2003).

      7. The Disclosure Statement does not specify that in Desert Oasis' prior bankruptcy, it did not apply for or obtain financing pursuant to 11 U.S.C. § 364.  Similarly, the Disclosure Statement should reflect that neither the Desert Land confirmation order nor Desert Land's confirmed plan

4

provided for any notice, any hearing, any findings, or any approval of any specific loan to Desert Oasis, nor for the grant of any super priority lien to any specific lender (or to any lender) for a loan to Desert Oasis, under Section 364.

8. The Disclosure Statement states that the loan between Debtor and JP Morgan Chase (since assigned to Wells Fargo) was made during the time between the order confirming Desert Land's plan and the decision of the Bankruptcy Appellate Panel (Ct. Dkt. #56, D/S at 8:4-6). Debtor apparently seeks to imply the loan was part of the bankruptcy proceedings, and thus seeks to mislead creditors in soliciting a vote on the plan. However, as Debtor states in the Disclosure Statement, the original loan was made on July 21, 2003, at which time Desert Oasis, was not a debtor in any bankruptcy case. The portion of Parcel A owned by Desert Oasis was not property of the estate at that time, as the bankruptcy of Desert Oasis had been ordered dismissed both on April 21, 2003 and June 23, 2003. *See supra*.

9. The Disclosure Statement should reflect that:

    a. Mr. Gonzales' complaint does not assert that there is a lien, but seeks a judicial determination to confirm that his rights regarding the Parcel A Transfer Fee constitutes part of a right or an interest given in Parcel A.

    b. A notice of *lis pendens* was not recorded in regards to Mr. Gonzales' litigation.

    c. Pursuant to the terms of Desert Land's confirmed plan, any sale, transfer, or other conveyance of all, or any part of Parcel A (with certain specified exceptions), which occurred concerning any portion of Parcel A, triggers Mr. Gonzales' rights in the entirety of Parcel A, including that portion of Parcel A owned by Desert Oasis.

///
///
///

1         d. Mr. Gonzales has asserted the occurrence of a trigger event in his complaint, and, further, Desert Oasis is aware of (1) a lease made on a portion of Parcel A owned by Desert Land, and (2) Desert Oasis is aware that there are other existing and/or future leases to be made upon Desert Land's portion of Parcel A, which Gonzales asserts are, or would be, additional trigger events.

Dated this 9th day of August, 2011      ARMSTRONG TEASDALE LLP
By:   /s/Louis M. Bubala III
LOUIS M. BUBALA III, ESQ.

Counsel to Tom Gonzales