1  Lenard E. Schwartzer
   Nevada Bar No. 0399
2  Emelia L. Allen
   Nevada Bar No. 11898
3  Schwartzer & McPherson Law Firm
4  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada 89146-5308
5  Telephone: (702) 228-7590
   Facsimile: (702) 892-0122
6  E-Mail: bkfilings@s-mlaw.com
7  *Attorneys for Debtor and Debtor in Possession*

8               **UNITED STATES BANKRUPTCY COURT**

9                        **DISTRICT OF NEVADA**

10 In re:                                  Case No. BK-S-11-17208-BAM

11 **DESERT OASIS APARTMENTS, LLC,**       Chapter 11

12                              Debtor.    **REPLY TO WELLS FARGO BANK'S**
                                           **OBJECTION TO DESERT OASIS**
13                                         **APARTMENTS, LLC'S DISCLOSURE**
                                           **STATEMENT**
14

15                                         Hearing Date:    August 23, 2011
                                           Hearing Time:    10:00 a.m.
16

17         DESERT OASIS APARTMENTS, LLC, the debtor and debtor-in-possession ("Debtor") in

18 the above-captioned chapter 11 case, by and through undersigned counsel, hereby files this reply

19 to Wells Fargo Bank's Objection to Desert Oasis Apartments, LLC's Disclosure Statement (the

20 "Opposition").

21         The Lender's Opposition contains two parts:

22     1.  The Disclosure Statement does not contain adequate information for creditors to make

23         a decision whether to accept or reject the Plan; and

24     2.  The Plan is not confirmable.

25 Both allegations are untrue.

26         Based on the Bank's arguments and current financial data, the Debtor has filed an

27 Amended Plan and a Disclosure Statement to the Amended Plan. A red-lined copy of the

28 Amended Plan is attached as Exhibit "1" and a red-lined copy the Disclosure Statement to the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Amended Plan is attached as Exhibit "2". The proposed exhibit to the Disclosure Statement

2  showing the Debtor's Cash Flow History and Projections is attached as Exhibit "3". A revised

3  proposed Order approving the Disclosure Statement is attached as Exhibit "4".

4    1.    The Disclosure Statement is Adequate

5    Adequate information is "a flexible concept that permits the degree of disclosure to be

6  tailored to the particular situation." *Official Committee of Unsecured Creditors v. Michelson (In re*

7  *Michelson)*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992). However, at an "irreducible

8  minimum," a disclosure statement must provide information about the plan and how its provisions

9  will be effected. *Id.* What is adequate is a subjective determination to be made on a case-by-case

10  basis. *In re Brotby*, 303 B.R. at 193 (quoting *In re Tex. Extrusion Corp.,* 844 F.2d 1142, 1157 (5th

11  Cir. 1988)).

12    As noted by the Bank, there is no dispute as to the Debtor's history because the Debtor

13  copied that history, almost word for word, the Lender's earlier brief. It should be noted that the

14  Bank agrees with the Debtor's positions that Gonzales is <u>not</u> entitled to relief in the pending

15  litigation.

16    The only remedial information that is relevant to creditors concerned with Plan

17  confirmation is the Debtor's cash flow history and projections which show that the apartment

18  complex has consistently produced sufficient cash flow to make the payments required by the

19  Plan. The Disclosure Statement, as amended, includes the history and projections.

20    The Lender's main objection is that the Plan provided to take the matured over-secured

21  debt and pay it with interest and amortization of principal with a balloon payment at the end of ten

22  years with the Lender retaining its current lien position at all times. The Debtor's  Disclosure

23  Statement to the Amended Plan states Debtor's position on these issues.

24    2.    Confirmabilty Arguments Should Be Ignored At This Time

25    The hearing on the disclosure statement is for determination of the adequacy of the

26  disclosure statement.  Bankruptcy Code §1125(a)(1). While there are cases which hold that a

27  Court can deny approval of a disclosure statement of an absolutely unconfirmable plan, that is not

28

present in the case.[1] "[S]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected." *In re Miller*, 2008 WL 191256, *3 (Bankr.W.D.La. 2008) (quoting *In re Cardinal Congregate I,* 121 B.R.760, 764 (Bankr.S.D.Ohio 1990). The Debtor's proposed Plan is confirmable for the following reasons:

1.      The Bank will retain its lien position in compliance with Bankruptcy Code §1129(b)(2)(A)(i)(I)

2.      The Bank will be paid interest commensurable with its first lien position in compliance with Bankruptcy Code §1129(b)(2)(A)(i)(II).

3.      The Bank and the Debtor will continue to dispute Gonzales' allegations. If Gonzales is successful in his litigation and (1) has a lien and (2) that lien has priority ahead of the Bank's lien, the Bank will have been overpaid (since it is an unsecured creditor).

4.      The balloon payment proposed is 75% of the current debt. However, the property, according to the appraisals has a current loan to value ratio of <u>47</u>%. That would make the balloon due in 10 years <u>35</u>% of the current value of the property. In a normal financial market, there is reasonable expectation that such financing would be available.

<u>Gonzales Claim</u>

Gonzales has made a claim that both the Debtor and the Bank dispute. That issue is presently pending in the U.S. Bankruptcy Court for the District of Nevada as Adversary No. 11-05015. The presiding bankruptcy judge, Judge Zive, has recommended that the Adversary be withdrawn to the to the U.S. District Court because it involves non-bankruptcy issues between

---

1.  The case cited by the Bank, *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr.N.D.Cal. 1999), said that "a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, *if the plan could not possibly be confirmed*." *See also In re CRIIMI MAE, Inc.,* 251 B.R. 796, 799 (Bankr.D.Md. 2000) (same); *In re Mahoney Hawkes, LLP,* 289 B.R. 285, 294 (Bankr.D.Mass.2002) (when the "plan is so fatally, and obviously flawed that confirmation is impossible.").

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   several non-debtor parties[2] as well as issues between Gonzales and two debtors, and none of the

2   claim arise under bankruptcy law[3]. That litigation will take an unknown amount of time to resolve.

3   In the meantime, the Debtor's Plan reorganizes the Debtor's other debts. The Bank's position is, in

4   this case, that no Plan can be confirmed when there is a larger disputed claim.

5          The Plan does deal with the Gonzales claim. He is not impaired. If Gonzalez wins, he will

6   have a first lien on the property as well as property owned by non-debtor affiliates of the Debtor

7   with substantial value in excess of $10 million. None of Gonzales' rights will be affected by the

8   Plan. If Gonzales wins but he is not given a first priority lien, he will have an unsecured debt owed

9   to him of $10 million by the Debtor and non-debtor affiliates. None of Gonzales' rights will be

10  affected by the plan[4]. That is why his claim is deemed unimpaired. Based upon the motion to

11  dismiss filed by the Bank in the pending Adversary Proceeding the Debtor may ask this Court to

12  determine the amount currently due to Gonzales as $0.

13         <u>Feasibility</u>

14         The Bank argues that the Plan is not "remotely feasible". The payments required on the

15  Effective Date are outline in the Disclosure Statement and estimated as being $101,635 (including

16  $50,000 for attorney's fees). See Disclosure Statement, page 17. The Debtor has $79,179 cash as

17  of June 30, 2011 shown on its Monthly Operating Report [Docket No. 76]. The Debtor's counsel

18  has a retainer of approximately $164,000 which should be sufficient to pay Debtor's counsel's

19  administrative claim in full. The Debtor's post-petition operation of its apartment complex

20  operates with a positive cash flow which is more than sufficient to pay the proposed monthly

21  payment to the Bank. As stated in the Disclosure Statement, the Plan requires monthly payment to

22  the Bank of approximately $17,250 per month. In June, 2011 (the first full month of operation

23  _____

24  2.  The applicability of the U.S. Supreme Court's decision in *Stern v. Marshall,*  No. 10-179, 564
     U.S. ___ (June 23, 2011), is a concern to all parties.
25

26  3. This court can take judicial notice of the Order and Recommendation of Judge Zive [Docket
     No. 54 in Adversary No. 11-5015].
27

28  4. Of course, if Gonzales loses, his rights are unimpaired.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

under Chapter 11), the Debtor paid the Bank $14,959, pursuant to the Final Order Authorizing the Use of Cash Collateral [Docket No. 46], and still had a positive cash flow of $17,458. See June, 2011 Monthly Operating Report [Docket No. 76]. This indicates that a monthly payment to the Bank of $17,250 is feasible. In addition, the Debtor has attached a schedule of its past cash flow and projected future cash flow as an exhibit to the Disclosure Statement. If the Bank is arguing that the payment of a balloon payment in 10 years is not feasible that is a matter of evidence at confirmation. At that time, the Debtor's burden is to prove feasibility.[5]

Fair and Equitable[6]

If the Bank's lien is not defective, the lien it retains under the Plan is not defective. This satisfies § 1129(b)(2)(A).

The Bank objects to the Plan being Fair and Equitable because the Gonzales lien question is not decided prior to confirmation. That is not a requirement of the statute. Bankruptcy Code §1129(b)(2)(A)(i)(I) only requires that the "creditor *retains* the lien securing its claim". The statute does not require a debtor to guarantee, improve or increase the priority of a creditor's lien. Both the Debtor and the Bank agree that Gonzales' alleged lien must be inferior to the Bank's lien

---

5. Under the feasibility requirement of § 1129(a)(11), a debtor must demonstrate that the plan "has a reasonable probability of success." *In re Acequia, Inc.,* 787 F.2d 1352, 1364 (9th Cir.1986); *See also In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."); and *In re Sagewood Manor Assoc. Ltd. Partnership,* 223 B.R. 756, 762-63 (Bankr.D.Nev. 1998) ("While a reviewing court must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of § 1129(a)(11), ... only 'a relatively low threshold of proof [is] necessary to satisfy the feasibility requirement.' ... The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed.").

6. The United States Court of Appeals for the Ninth Circuit has held that "[t]o be 'fair and equitable' [a] plan must satisfy, with respect to secured claims, one [not all] of the ... three tests" set forth in § 1129(b)(2)(A). *In re Arnold & Baker Farms,* 85 F.3d 1415, 1420 (9th Cir.1996); *In re Ambanc La Mesa Ltd. P'ship,* 115 F.3d 650, 653 (9th Cir.1997) ("The 11 U.S.C. § 1129(b)(2) cramdown provision specifies that a fair and equitable plan provide one of three alternatives for the holders of secured claims."). The Plan satisfies the first test in § 1129(b)(2)(A).

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  because (a) Gonzales has no right to a lien and (b) because the Bank's lien was given pursuant to

2  an order of the bankruptcy court and (i) the appeal from that order was taken and (ii) no stay

3  pending appeal was granted[7]. See Bankruptcy Code §364(e).

4      Indubitable equivalent is not a valid issue because, the Debtor's Plan provides the Bank

5  with the identical lien the Bank presently has. The issue of whether the interest payment is the

6  indubitable equivalent of the bank's claim, is a question of fact, not determinable without an

7  evidentiary hearing.[8]  The Debtor has revised the Plan to provide for an interest rate of 4.5% to

8  reflect the current reduced interest rate of 10 year Treasury Notes (arguably, the "risk-free" rate)

9  which are now below 2.5%. The Plan also provides the Bank with a stream of monthly payments

10  as required by subsection II of §1129(b)(2)(A)(ii).[9] The "value" of the stream of payments

11  requires payment an appropriate rate of interest, considering the terms, quality of the security and

12

13

---

14  7 . This Court can take judicial notice of the pleadings in Case No. BK-S-02-16202-RCJ including
    Order (A) Authorizing Desert Oasis Apartments LLC Pursuant to 11 U.S.C. §§ 105, 361, 364(c)
15  and 364(d), To Obtain Secured Post-Petition Financing; and (B) Scheduling A Final Hearing
    Pursuant to Bankruptcy Rule 40001(c) [Docket No. 134], from which no appeal was taken; and
16  the Order Confirming Second Amended Chapter 11 Plan of Reorganization; Approving
    Settlement Agreement; Approving Assumption and Assignment of Executory Contracts and
17  Unexpired Leases; and Dismissing Cases of DESERT OASIS APARTMENTS AND DESERT
    RANCH [Docket No. 189] from which an appeal was taken [Docket No. 212], a temporary stay
18  pending appeal was granted [Docket No. 264] and a stay pending appeal was denied [Docket No.
19  281].

20  8. *See In re CRIIMI MAE, Inc.,* 251 B.R. 796, 799 (Bankr.D.Md. 2000); *In re James Wilson
    Assocs.,* 965 F.2d 160, 172 (7th Cir.1992) ("question of whether the interest received by a secured
21  creditor under a plan of reorganization is the indubitable equivalent of his lien is one of fact"); *see
    also, In re Snowshoe Co.,* 789 F.2d 1085, 1088 (4th Cir.1986) (finding indubitable equivalence in
22  context of 11 U.S.C. § 361(3) to be "a question of fact rooted in measurements of value and the
23  credibility of witnesses").

24  9. *Matter of Briscoe Enters., Ltd., II,* 994 F.2d at 1169 ("Deferred cash payments consist of an
    appropriate interest and an amortization of principal which constitutes the secured claim."); *U.S. v.
25  TM Bldg. Products, Ltd.,* 231 B.R. 364, 372 (S.D.Fla.1998) ("'Deferred cash payment' has been
    defined to mean periodic payments, the interval of which is determined by balancing the
26  circumstances of the debtor with the reasonable right of the creditor to receive prompt payment of
27  its claim." (quotation omitted)); *In re Weinstein,* 227 B.R. 284, 294 (9th Cir.BAP 1998)
    ("Subsection (II) of § 1129(b)(2)(A)(i) guarantees an electing creditor a stream of payments equal
28  to its total claim.").

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

any risk to be borne by the affected creditor.[10]  The Debtor intends to introduce expert testimony on this issue at the confirmation hearing.

## CONCLUSION

This Court should approve the Disclosure Statement to the Amended Plan with the additional information concerning the historic cash flow and projected cash flow of the apartment complex.

Dated this 16th day of August, 2011.

Lenard E. Schwartzer, Esq.
Emelia L. Allen, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
*Attorneys for Debtor and Debtor in Possession*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

10 *In re P.J. Keating Co.,* 168 B.R. 464, 472 (Bankr.D.Mass. 1994); *In re Landscape Assocs., Inc.,* 81 B.R. 485, 487-88 (Bankr.E.D.Ark.1987).

# EXHIBIT "1"

LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. MCPHERSON (NV Bar No. 5423)
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone:     (702) 228-7590
Facsimile:     (702) 892-0122
Email:         bkfilings@s-mlaw.com

Counsel for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-11-17208-BAM |
| **DESERT OASIS APARTMENTS, LLC,** | Chapter 11 |
| Debtor. | |
| | Hearing Date: |
| | Hearing Time: |
| | Place:          Courtroom #3 |

### DESERT OASIS APARTMENT, LLC'S AMENDED PLAN OF REORGANIZATION

Formatted: No underline

Deleted: PLAN OF REORGANIZATION DATED JUNE 24, 2011¶

## ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of DESERT OASIS APARTMENT, LLC (the "Debtor"). The Debtor owns the real property and improvements located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property"). The Property consists of approximately 6.4 acres located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard. On the Property is an apartment complex consisting of 128 one- and two-bedroom units. Approximately, 92%-95% of the apartment units are occupied by tenants ("Tenants"). The Property is worth approximately $6,500,000 and is subject to a loan in the approximate amount of $3,076,000 now held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank") which has matured.

The current owner obtained title to the Property in August of 1999.

compare plan 060811 to plan 081011.docx

1

This Plan provides for one class of priority claims; one class of secured claims; one class of unsecured claims; and one class of equity security holders. **Under the Plan, the rights of Tenants are unimpaired.** The Bank will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar. The Plan proposes to pay the Bank in full over a period of 10 years using the rental income from the Tenants to pay market rate interest of 4.5% per annum and principal amortized over 25 years and a balloon payment at the end of 10 years obtained through sale or refinancing when the mortgage markets become more normal. Tenants with priority claims for deposits will be paid 100% in the normal course of operation of the apartment complex. Under the Plan, the unsecured claim of Tom Gonzales is unimpaired. Under the Plan, the unsecured creditors, except insiders, will be paid over eleven months without interest. Under the Plan, insiders will agree to subordinate their claims to the claims of other unsecured creditors. This Plan also provides for the 100% payment of all other administrative, including fees payable to the Office of the United States Trustee, and priority claims upon confirmation.

All creditors and equity security holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1. | All allowed claims entitled to priority under § 507 of the Code. |
| 2.02 | Class 2. | The claim of the Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 3. | The claim of Tom Gonzales. |
| 2.04 | Class 4. | All unsecured claims allowed under § 502 of the Code. |
| 2.05 | Class 5. | Equity interests in the Debtor. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: .25

Deleted: Error! Unknown document property name. .

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**ARTICLE III**

**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**

**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01    <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    <u>Priority Tax Claims</u>.  Each holder of a priority tax claim will be paid on the Effective Date of this Plan, in cash.

3.04    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VIII, or the date on which such claim is allowed by a final non-appealable order. |

**Deleted:** Error! Unknown document property name.

| | | |
|---|---|---|
| Class 2 – Secured Claim of Bank (approximately $3,100,000) | impaired | Class 2 is impaired by this Plan. The Bank will be paid its claim in full, including principal, accrued interest and costs and reasonable attorneys' fees.  This amount shall be paid with interest at the rate of 4.5% per annum from the Effective Date. Beginning on 1st day of the 1st month following the Effective Date, the Bank shall be paid an amount necessary to amortize its claim over 25 years together with interest. In addition payments for insurance and real estate taxes will be escrowed. The balance of the Claim shall be all due and payable in 10 years from the Effective Date. There will be no pre-payment penalty. The loan will be assumable. The Bank shall retain its lien on the Property, with the same priority it held of the date of the Debtor's Petition. |
| Class 3 – Tom Gonzales ($10,000,000) | unimpaired | Class 3 is unimpaired by this Plan.  Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization.  That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan. This claim is unsecured. This claim is subject to setoffs and counterclaims by the Debtor. |
| Class 4 - General Unsecured Creditors | impaired | Class 4 is impaired by this Plan. Non-Insider General Unsecured Creditors will be paid in full, without interest from the rent collected from the Tenant. Beginning on 1st day of the 1st month following the Effective Date, Class 4 will be paid $3,000 per month pro rata for approximately 9 months.<br>Desert Land, LLC,  Citation Financial, LLC and Compass Investments Holdings, LLC have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and repair of the Property have been funded. |
| Class 5- Equity Security Holders of the Debtor | unimpaired | Class 5 is unimpaired by this Plan. Equity Security Holders (the members of the Debtor) will retain their equity interest in the Debtor. |

**Deleted:** first priority

**Deleted:** ¶

## ARTICLE V

### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed

by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed

**Deleted:** Error! Unknown document property name. .

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

<div align="center">

**ARTICLE VI**

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

</div>

6.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.

(a)    The Debtor assumes the following executory contracts and/or unexpired leases effective upon the:

- Leases with Tenants.
- Westcorp Management Group - property management

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

<div align="center">

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

</div>

The means for implementation of this Plan is the rents paid by Debtor's existing and future Tenants. The Debtor will sell or refinance the Property within 120 months following the Effective Date.  The proceeds from such sale or refinance shall be used to fund the balloon payment to the Bank as set forth in the Plan.  <u>If the Property is sold, the Debtor and its affiliates which own the adjacent land will pay the Parcel A Transfer fee to Gonzales from the sales proceeds.</u>

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

<div style="border:1px solid">

**Deleted:** // ¶
// ¶
// ¶

</div>

<div style="border:1px solid">

**Deleted: Error! Unknown document property name.**.

</div>

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Additionally, the following definitions apply:

a.    The "Bank" shall mean Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1.

b.    The "Property" shall mean the real property and improvements thereon located in Las Vegas, NV described as Assessor's Parcel Number 162-28-310-001 (the "Property") consisting of approximately 6.4 acres  located on the south side of Mandalay Bay Road and approximately 800 feet east of Las Vegas Boulevard.

c.    The "Tenants" shall mean the tenants who rent apartment units on the Property.

d.    The "Effective Date" of this Plan is the fifteenth business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

e.    The "Desert Land Plan of Reorganization" is that plan of reorganization that was confirmed in the case of *In re Desert Land, LLC*, Case No. BK-S-02-16202-RCJ by an order entered April 13, 2003 as amended by decisions of the Bankruptcy Appellate Panel for 9th Circuit and the Court of Appeals for the 9th Circuit.

f.    The "Parcel A Transfer Fee" is the fee provided to be paid to Tom Gonzales in the Desert Land Plan of Reorganization when, and only when, there is a Parcel A Transfer as defined in the Desert Land Plan of Reorganization.

8.02    <u>Severability</u>.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**Deleted:** Error! Unknown document property name.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

8.04    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05    <u>Controlling Effect</u>.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06    <u>Governance</u>.   The Debtor will maintain its current form of governance and its current managers until such managers are replaced as provided in its existing Operating Agreement.

8.07    <u>Revesting of Assets in the Debtor</u>.  Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

8.08    <u>Disbursing Agent</u>.  The Debtor will serve as disbursing agent and shall make all payments required under the Plan.  The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

8.09    <u>Request for Application of 11 U.S.C. § 1129(b)</u>.  The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

8.10    <u>Post-Confirmation Management of the Debtor</u>.  The Debtor shall be managed post-confirmation by its current manager, David Gaffin.

8.11    <u>Post-Confirmation Litigation</u>.  The Debtor anticipates post-confirmation litigation with Tom Gonzales over the enforcement of the terms of the Plan of Reorganization entered in the Desert Land, LLC Chapter 11 case, as amended by the decisions of the Bankruptcy Appellate Panel for the 9th Circuit and the Court of Appeals for the 9th Circuit, and except for collection matters that may occur in the normal course of the Debtor's business, and the determination of certain claims.  The Debtor reserves the right to prosecute any objections to claims.

**Deleted:** Error! Unknown document property name.

8.12    Post-Confirmation Default.  In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

Lenard E. Schwartzer, Esq.                Desert Oasis Apartments, LLC
Schwartzer & McPherson Law Firm           10181 Park Run Drive, Ste. 200
2850 S. Jones Blvd, Ste. 1                Las Vegas, NV 89145
Las Vegas, NV 89146-5308

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default.  In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court.  At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time.  The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

8.13    Federal Income Tax Consequences of the Plan.  The Plan will have limited tax consequences.  The Debtor, as a limited liability company, has elected to be treated as a partnership for federal income tax purposes and, therefore, does not pay federal income tax.  The Plan does not call for forgiveness of any debt.  Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

8.14    Injunction.  From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold, or may hold a Claim, are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or its Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their

SCHWARTZER & McPHERSON LAW FIRM
2850 S. South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Deleted:** Error! Unknown document property name.

respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

8.15    Exculpation.  From the Petition Date through the Effective Date, the Debtor and its managers, attorneys, agents and employees shall not have any liability to the Debtor or any other claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Case and the Plan.

8.16    Post-petition Employment of Counsel.  Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services.  Counsel may be paid from the Debtor without further order of the Court.

8.17    Closing Case.  The estate shall be deemed to be fully administered upon the commencing of distributions to the Class 1 creditor and the case may be closed.

## ARTICLE IX

## DISCHARGE

Discharge.  The Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date.

Respectfully submitted,

Desert Oasis Apartments, LLC

By _____

David Gaffin, Manager

The Plan Proponent

Prepared by:

SCHWARTZER & McPHERSON LAW FIRM

Deleted: By:    /s/   David Gaffin _____¶

Deleted: Error! Unknown document property name.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122



By:
Lenard E. Schwartzer, Esq.
*Counsel for the Debtor and Debtor in Possession*
*And Plan Proponent*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Deleted:** By:    /s/   Lenard E. Schwartzer    ¶

**Deleted:** Error! Unknown document property name..

# EXHIBIT "2"



LENARD E. SCHWARTZER (NV Bar No. 0399)
JEANETTE E. MCPHERSON (NV Bar No. 5423)
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone:    (702) 228-7590
Facsimile:    (702) 892-0122
Email:         bkfilings@s-mlaw.com

Counsel for Debtor and Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re

**DESERT OASIS APARTMENTS, LLC,**

                                    Debtor.

Case No. BK-S-11-17208-BAM

Chapter 11

Hearing Date:   August 23, 2011
Hearing Time:   10:00 a.m.
Place:          Courtroom #3

**DESERT OASIS APARTMENTS, LLC'S
DISCLOSURE STATEMENT TO
DEBTOR'S AMENDED PLAN OF REORGANIZATION**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel. (702) 228-7590 · Fax. (702) 892-0122

Formatted: Section start: New page, Footer distance from edge: 0.23"

Formatted: Section start: Continuous

Deleted:

Formatted: Underline

Deleted: ¶

———— Section Break (Continuous) ————

Deleted: p:\desert land\deset oasis chapter 11 pleadings\plan ds\disclosure statement 062211.doc

p:\desert land\deset oasis chapter 11 pleadings\plan ds\compare ds 061611 to ds 081011.docx

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

### TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 4

        A.      Purpose of This Document........................................................................... 5

        B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing......................... 5

                1.      Time and Place of the Hearing to Confirm the Plan ........................ 6

                2.      Deadline For Voting to Accept or Reject the Plan ............................ 6

                3.      Deadline For Objecting to the Confirmation of the Plan ................... 6

                4.      Identity of Person to Contact for More Information ......................... 6

        C.      Disclaimer ...................................................................................................... 6

II.     BACKGROUND ....................................................................................................... 7

        A.      Description and History of the Debtor's Business ...................................... 7

                1.      The Gonzales Loan ............................................................................ 7

                2.      Desert Land & Desert Oasis Bankruptcy Action ............................. 8

                3.      Gonzales' Appeal of the Subordination Language in the Settlement Agreement ...... 11

                4.      JP Morgan Chase Loan .................................................................... 11

                5.      The Gonzales Action ....................................................................... 15

                6.      Reduction of the Loan Balance ....................................................... 18

        B.      Insiders of the Debtor .................................................................................. 18

        C.      Property Value ............................................................................................. 19

        D.      Management of the Debtor Before and During the Bankruptcy ................. 19

        E.      Events Leading to Chapter 11 Filing .......................................................... 19

        F.      During the Bankruptcy Case........................................................................ 19

        G.      Projected Recovery of Avoidable Transfers ............................................... 19

        H.      Claims Objections ....................................................................................... 20

        I.      Current and Historical Financial Conditions .............................................. 20

**Formatted:** Tab stops:  3.25", Centered + Not at 3"

III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND
      EQUITY INTERESTS ........................................................................................... 21

      A.  What is the Purpose of the Plan of Reorganization?............................................ 21

      B.  Claims ............................................................................................................... 21

          1.   Class 1. *Administrative Expenses and Priority Claims*

          2.   Class 2. *Bank Secured Claim*

          3.   Class 3. *Gonzales Claim*

          4.   Class 4. *Class of General Unsecured Claims*

          5.   Class 5. *Class of Equity Interest Holders*

      C.  Means of Implementing the Plan ........................................................................ 25

      D.  Risk Factors ...................................................................................................... 25

      E.  Executory Contracts and Unexpired Leases ........................................................ 26

      F.  Tax Consequences of Plan ................................................................................. 26

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ...................................... 27

      A.  Who May Vote or Object ................................................................................... 27

      B.  Votes Necessary to Confirm the Plan ................................................................. 28

          1.   *Votes Necessary for a Class to Accept the Plan* .......................................... 29

          2.   *Treatment of Nonaccepting Classes* ........................................................... 29

      C.  Liquidation Analysis ......................................................................................... 29

      D.  Feasibility ......................................................................................................... 30

          1.   *Ability to Initially Fund Plan* ..................................................................... 30

          2.   *Ability to Make Future Plan Payments And Operate Without Further Reorganization* 30

V.    EFFECT OF CONFIRMATION OF PLAN ............................................................... 31

      A.  Discharge .......................................................................................................... 31

      B.  Modification of Plan .......................................................................................... 32

      C.  Final Decree ...................................................................................................... 32

LIST OF EXHIBITS ...................................................................................................... 33

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Indent: Left: 0.5"

Formatted: Font: Times New Roman

Formatted: Heading 1, Left, Line spacing: single

Formatted: Tab stops: 3.25", Centered + Not at 3"

# I.    INTRODUCTION

**DESERT OASIS APARTMENTS, LLC** (the "Debtor" or "Desert Oasis") is the owner of Parcel Number 162-28-310-001 (the "Property"). The Property consists of approximately 6.4 acres located on the south side of Mandalay Bay Road approximately 800 feet east of Las Vegas Boulevard. On the Property is an apartment complex consisting of 128 one- and two-bedroom units. Approximately, 92%-95% of the apartment units are occupied by tenants ("Tenants"). The Property is worth approximately $6,500,000[1] and is subject to a loan in the approximate amount of $3,076,000 now held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank") which has matured. The current owner obtained title to the Property in August of 1999.

The Debtor has proposed an Amended Plan of Reorganization (the "Plan"). The Plan provides for one class of priority claims; one class of secured claims; one class of unsecured claims; and one class of equity security holders. **Under the Plan, the rights of Tenants are unimpaired.** The Bank will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar. The Plan proposes to pay the Bank's claim in full over a period of 10 years using the rental income from Tenants to pay interest at the rate of 4.5% per annum interest and principal amortized over 25 years and a balloon payment on or before 10 years. The final payment will be accomplished through sale or refinancing as the mortgage markets become more normal. Tenants with priority claims for deposits will be paid 100% in the normal course of operation of the apartment complex. Under the Plan, the unsecured claim of Tom Gonzales is unimpaired. Under the Plan, the unsecured creditors, except insiders, will be paid over eleven months without interest. Under the Plan, insiders will agree to subordinate their claims to the claims of other unsecured creditors. This Plan also provides for the 100% payment of all other administrative, including fees payable to the Office of the United States Trustee, and priority claims upon confirmation

---

[1]. The Market Value of the Property, "As Is – As Stabilized" as of May 26, 2011, was determined by RCS APPRAISAL, INC. to be $6,000,000. The Debtor's opinion is that the Property's market value is $6,500,000.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Deleted:** :

**Formatted:** Font: Times New Roman

**Deleted:** This

**Deleted:** the

**Deleted:** current market rate

**Deleted:** .25

**Deleted:** in

**Deleted:** obtained

**Deleted:** when

**Deleted:** .

**Deleted:** [1]

**Formatted:** Font: 11.5 pt

**Formatted:** Tab stops:  3.25", Centered + Not at 3"

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

This is the disclosure statement  (the "Disclosure Statement") in the chapter 11 case of **DESERT OASIS APARTMENTS, LLC.**  This Disclosure Statement contains information about the Debtor and describes the **DESERT OASIS APARTMENTS, LLC's** <u>AMENDED</u> **PLAN OF REORGANIZATION**  (the "Plan") filed by the Debtor.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit "A."  *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages <u>22-25</u> of this Disclosure Statement.  All Creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at 100 cents on the dollar.

A.      **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor's assets and liabilities;
- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Proponent believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

| Deleted: DATED JUNE 24,2011 |
| Deleted: 17-20 |
| Formatted: Tab stops:  3.25", Centered + Not at  3" |

1.    *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether confirm the Plan will take place on a date and time to be set by the Court at the United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada.

2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Schwartzer & McPherson Law Firm, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada 89146-5308. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by on a date to be set by the Court or it will not be counted.

3.    *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Schwartzer & McPherson Law Firm, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada 89146-5308 by on a date to be set by the Court.

4.    *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Schwartzer & McPherson Law Firm, 2850 South Jones Boulevard, Suite 1, Las Vegas, Nevada 89146-5308

C.    **Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: [insert

Deleted: 1 , at [insert

Deleted: 1,

Formatted: No underline, Not Highlight

Formatted: Not Highlight

Deleted: [insert

Formatted: No underline, Not Highlight

Deleted: ]

Deleted: [insert

Formatted: No underline, Not Highlight

Deleted: ].

Deleted: .

Deleted: ¶

Formatted: Single Spacing,SS,ss,Centered, Line spacing:  Exactly 23.75 pt, No widow/orphan control

Formatted: Tab stops:  3.25", Centered + Not at  3"

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

#### 1.    The Property

The Debtor was formed for the purpose of acquiring the Property in 1999. The Property is identified as the Oasis, a 127-unit apartment complex located approximately one-half mile south of Tropicana Avenue and about one-fourth mile east of Las Vegas Boulevard within the unincorporated township of Paradise in Clark County, Nevada. It is identified as Assessor's Parcel Number 162-28-310-001. The project consists of 127 units that were built in 1984. The Property consists of 110,391 square feet of net rentable area with 16 two-story buildings with a mixture of one-bedroom, and two-bedroom units ranging in size from 681 to 1,013 square feet. The average unit size is 869 square feet. The Property also includes a rental office, laundry, swimming pool and a spa. Each unit includes a designated one-car covered parking stall. At this time, approximately 95% of the apartment units are occupied.

#### 2.    The Gonzales Loan

On December 7, 2000, Tom Gonzales ("Gonzales") loaned $41.5 million ("Gonzales Loan") to Desert Land, LLC ("Desert Land") and Desert Oasis to finance Desert Land and Desert Oasis' acquisition of certain property in Las Vegas, Nevada[2]. The Gonzales Loan was secured by a Deed of Trust recorded against property owned by Desert Land and Desert Oasis, commonly known by the parties as Parcel "A"[3] In addition, in further consideration for the Gonzales Loan, Desert Land and Desert Oasis deeded to Gonzales an undivided five percent (5%) ownership interest in Parcel "A", and deeded another undivided half a percent (0.5%) ownership interest to a different investor[4]. As

---

2. The primary business of Desert Land, Desert Ranch and Desert Oasis was to assemble large parcels of real estate along Las Vegas Boulevard, in Las Vegas, Nevada, for development, joint venture, or sale.

3. The property comprising Parcel "A", under the Gonzales Loan and the Deed of Trust was made up of various smaller parcels owned by Desert Land, and the Property owned by Desert Oasis.

4. Barry Fieldman was deeded an undivided 0.5% interest. Because Desert Land and Desert Oasis deeded 5.5% of their interest in Parcel "A" to Gonzales and Fieldman, the Deed of Trust was only secured by a 94.5% interest in Parcel "A".

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

additional security for the Gonzales Loan, Desert Land assigned and granted to Gonzales a security interest in Desert Lands' unexercised option to purchase four parcels of property near Parcel "A' from FLT Trust ("FLT Option").

Additional security for the Gonzales Loan included Desert Ranch, LLC ("Desert Ranch") guaranteeing the loan and pledging Gonzales a thirty-two and a half percent (32.5%) interest in New World, LLC[5], which owned additional parcels of real estate south of Parcel "A", commonly referred to by the parties as Parcels "B", "C", and "D".

### 3. *Desert Land & Desert Oasis Bankruptcy Action*

On May 31, 2002, Desert Land and Desert Oasis each filed separate voluntary bankruptcy petitions, which the bankruptcy court ordered jointly administered[6]. On August 26, 2002, Desert Land and Desert Oasis filed and sought approval of their joint disclosure statement and joint plan of reorganization. However, Gonzales and Makena Entertainment, LLC filed an opposition to Desert Land and Desert Oasis' proposed joint disclosure statement and plan, and so the bankruptcy court held a hearing on the motion on September 25, 2002. At the hearing the bankruptcy court ruled that various amendments be made to the disclosure statement.

On January 2, 2003, Desert Land and Desert Oasis filed an amended disclosure statement, which the bankruptcy court approved on January 8, 2003. A contested confirmation hearing for the amended disclosure statement was set for January 29, 2003. On January 24, 2003, Gonzales filed an objection to the debtors' confirmation plan of reorganization, petitioning the Court to hear the matter at the scheduled contested hearing on the objection to the plan. Desert Land and Desert Oasis then filed their amended plan of reorganization on January 29, 2003.

At the contested confirmation hearing in January, 2003, Gonzales and Desert Oasis, Desert Land, and Desert Ranch announced to the bankruptcy court that they had arrived at a settlement. The

---

5. At the time of the Gonzales Loan transaction, Desert Ranch owned 65% of New World, LLC, Gonzales and his assignees owned 30%, and Makena Entertainment, LLC owned the remaining 5%.

6. Desert Ranch, LLC also filed a separate voluntary bankruptcy petition on May 31, 2002, which the bankruptcy court ordered jointly administered with Desert Land and Desert Oasis.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

bankruptcy court then suspended confirmation of the disclosure statement and plan of reorganization

so that the parties could memorialize their Settlement Agreement. The terms of the settlement

provided that:

(1) Gonzales would extinguish his note, reconvey his deed of trust, and release Desert Ranch's

guarantee and pledge so that Desert Land and Desert Oasis would own 100 percent of Parcel

"A";

(2) Gonzales would receive $10 million if Parcel "A" upon the occurrence of certain triggering

events on any part of Parcel "A" ("Parcel "A" Transfer Fee")[7];

(3) Gonzales and Fieldman would convey to Desert Land and Desert Oasis their total

5.5 percent interest in Parcel "A"; and

(4) In exchange, Gonzales was to receive Desert Ranch's 65 percent interest in New

World.

*See* **Exhibit "D"**, BAP Decision, at 5:26-23.

Also under the settlement, for the parcel of property owned by Desert Oasis constituting Parcel

"A", Gonzales agreed to subordinate his deed of trust[8] to a loan of up to $5 million so that the

property could be used to secure a loan[9]. Gonzales also allowed his five percent (5%) interest in the

Desert Oasis parcel to be encumbered by the loan. Thus, by the settlement agreement between them,

---

7. Gonzales asserts and the Debtor disputes:
 As additional consideration for Gonzales' release of his note and deed of trust, he received the rights
that would result in payment to the Parcel A Transfer Fee upon the occurrence of certain triggering
events on any part of Parcel A, whether owned by Desert Oasis or Desert Land.

8. The single parcel of property owned by Desert Oasis constituting Parcel "A" was also eventually
reconveyed by Gonzales to Desert Oasis, per the terms of the settlement, on June 6, 2003. The Deed
of Reconveyance was duly recorded in the Official Records of Clark County Nevada on June 6, 2003,
as Document No. 0000735.

9. The bankruptcy court later approved Desert Oasis, Desert Land, and Desert Ranch's loan for $2
million from Eagle Mortgage Company. Gonzales asserts and the Debtor disputes:
Debtor inaccurately describes the agreed-to subordination under the settlement agreement. The
agreement discussed was a separate interim agreement wherein the Mr. Gonzales' deed of trust would
be subordinated to a loan for interim purposes pending the completion of settlement of documentation
and the actual reconveyance of the his deed of trust. Any implication that this was an agreement to
subordinate beyond interim financing pending the completion of the settlement documentation is an
incorrect implication.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Indent: Left: 0.5", First line: 0"

Deleted: Desert Ranch's guarantee and pledge so that Desert Land would own 100 percent of Parcel "A"

Deleted: was sold or transferred after ninety days, $7.5 million if sold within ninety days

Deleted: ");

Formatted: Tab stops: 3.25", Centered + Not at 3"

the parties essentially agreed that Desert Oasis and Desert Land would get Parcel "A", Gonzales would get Parcels "B", "C", and "D", and would receive the Parcel "A" Transfer Fee upon the occurrence of a qualifying land transfer associated with Parcel "A".

Despite their having arrived at a settlement, over the next few months the parties were unable to document the settlement in a manner acceptable to all parties. The sole dispute preventing the parties from finalizing the settlement was Desert Oasis, Desert Land, and Desert Ranch's demand that the $10 million Parcel "A" Transfer Fee be subordinated to future additional financing obtained by Desert Oasis and Desert Land, secured by Parcel "A". *See* **Exhibit D**, BAP Decision, 6:11-14, 23-25; 10:20-23. Gonzales refused to include such a mandatory subordination clause in the settlement agreement. Finally, on April 21, 2003, after numerous previous hearings on the matter, with the parties still deadlocked, the bankruptcy court declared that an oral settlement agreement had already been reached and entered an Order confirming Desert Oasis, Desert Land, and Desert Ranch's Second Amended Plan of Reorganization. This Confirmation Order with the Settlement Agreement attached is attached hereto as **Exhibit "C"**. With respect to the treatment of the Parcel "A" Transfer Fee which had been the sole reason for the hold up in finalizing the settlement agreement, the bankruptcy court ruled that Desert Oasis, Desert Land, and Desert Ranch could subordinate the Parcel "A" Transfer Fee up to $45 million in financing. Interestingly, such a subordination was not even required since Gonzales had no lien against the Parcel "A" property, having given up his deed of trust in the settlement. The Court-approved Settlement Agreement specifically provided: "The Parcel A Transfer Fee shall be evidenced by the Parcel A Memorandum, which shall not, however, constitute a mortgage, deed of trust or other lien on Parcel A, and payment thereof shall be subordinate to any Parcel A Permitted Financing."[10] This provision was not overturned by the appellate courts.

The Desert Land confirmation order specifically dismissed the Chapter 11 bankruptcy proceedings of Desert Oasis and Desert Ranch, and that an subsequent order was entered dismissing both cases.

_____

10. Gonzales disputes the Debtor's analysis of this language.

4.   *Gonzales' Appeal of the Subordination Language in the Settlement Agreement*

On May 5, 2003, Gonzales filed a notice of appeal from the confirmation order. The Bankruptcy Appeal Panel of the Ninth Circuit ("BAP Court") heard a request for a stay pending appeal and, ultimately, denied that request. The BAP heard the argument on the appeal on October 23, 2003, and issued a final decision on March 31, 2004. In its decision, the BAP Court confirmed that the sole issue being appealed and considered by the court was the subordination provision in the settlement agreement. *See* **Exhibit "D"**, BAP Decision 10:20-23. Namely, appellant Gonzales contended that while the parties did indeed arrive at a settlement, the bankruptcy court had erred when it ordered the inclusion of a subordination provision as part of the agreement, as Gonzales had never agreed to any such provision. *See* **Exhibit "D"**, BAP Decision 10:13-20. The BAP Court specifically identified the subordination language from the Bankruptcy Court Order, which was at issue in the appeal, as the following:

Gonzales will subordinate his right to the payment of the Parcel Transfer Fee to any such Parcel A Permitted Financing and shall execute, acknowledge and deliver, from time to time, upon no less than 20 day written notice to Gonzales, such subordination agreement(s) as may be reasonably required by title insurer insuring the liens or security interests related to the Permitted Parcel A Financing.

**Exhibit "D"**, BAP Decision 7:15-19.

Upon a hearing of the matter, and as reflected in the March 21, 2004 BAP Decision, the BAP Court ordered that the subordination provision be eliminated from the settlement agreement and bankruptcy court order, and that otherwise the bankruptcy court's order confirming Desert Land and Desert Oasis' second amended plan of reorganization was affirmed. Upon further appeal to the Court of Appeals, the BAP's decision was affirmed.  See **Exhibit "E"**.

5.   *JP Morgan Chase Loan*

In between the Bankruptcy Court's Order Confirming the Second Amended Plan of Reorganization, and the BAP Decision by the BAP Court, JP Morgan Chase issued a loan to Desert Oasis in the amount of $5,200,000.00 (the "Loan"). The Loan was secured by a Deed of Trust duly recorded against a parcel of property owned by Desert Oasis ("Desert Oasis Parcel") which was part

of Parcel "A". As noted above, the Desert Oasis Parcel, together with Desert Land's other parcels of property comprising Parcel "A", was the subject matter of bankruptcy dispute.

The Loan was later assigned by JP Morgan Chase to Wells Fargo Bank, N.A. as trustee for the Registered Holders of JPMorgan Chase Commercial Mortgage Pass-Through Certificates, Series 2004-FL1 (the "Bank" or "Wells Fargo"). The history of the Loan, as described by the Bank's counsel, is as follows:

a.    On July 21, 2003, Original Lender made the Loan to the Debtor in the principal amount of $5,200,000, as evidenced by a note, a properly recorded deed of trust, a properly recorded assignment of leases and rents, properly recorded financing statements, and a guaranty executed by the Debtor's managers, David B. Gaffin and B. Howard Bulloch (collectively, the "Loan Documents").

b.    The original maturity date for the Loan was August 10, 2006 (the "Original Maturity Date"). The Loan was secured by the apartment complex that is the subject of the Motion (the "Property") and the rents generated by the Property.

c.    In connection with a securitization, the Loan was transferred by Original Lender to Wells Fargo Bank, N.A., a national banking association, as trustee for J.P. Morgan Chase Commercial Mortgage Securities Corp., a Delaware corporation, as lender ("Lender").

d.    Midland Loan Services, Inc., a Delaware corporation ("Midland"), is the Loan's servicer. Pursuant to a participation agreement dated as of August 17, 2004, between Original Lender and Capital Trust, Inc. ("Capital Trust"), Lender appointed Special Servicer, which has authority to assert Lender's interests with respect to the Loan.

Gonzales requests that we note the following: In Desert Oasis' prior bankruptcy, it did not apply for or obtain financing pursuant to 11 U.S.C. § 364. Similarly, the Disclosure Statement should reflect that neither the Desert Land confirmation order nor Desert Land's confirmed plan provided for any notice, any hearing, any findings, or any approval of any specific loan to Desert Oasis, nor for the grant of any super priority lien to any specific lender (or to any lender) for a loan to Desert Oasis, under § 364.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Gonzales requests that we note the following: "The Disclosure Statement states that the loan between Debtor and JP Morgan Chase (since assigned to Wells Fargo) was made during the time between the order confirming Desert Land's plan and the decision of the Bankruptcy Appellate Panel. Debtor apparently seeks to imply the loan was part of the bankruptcy proceedings, and thus seeks to mislead creditors in soliciting a vote on the plan. However, as Debtor states in the Disclosure Statement, the original loan was made on July 21, 2003, at which time Desert Oasis, was not a debtor in any bankruptcy case. The portion of Parcel A owned by Desert Oasis was not property of the estate at that time, as the bankruptcy of Desert Oasis had been ordered dismissed both on April 21, 2003 and June 23, 2003.

**The Loan Maturity Date Is Extended Multiple Times through 2010**

e.      On August 2, 2006, Special Servicer agreed to waive a debt coverage ratio of 2.0 to 1 and extend the Original Maturity Date by one year to August 10, 2007, provided that, among other conditions, the Debtor paid certain fees and made a payment of $1,025,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

f.      On July 30, 2007, Special Servicer again agreed to waive a debt coverage ratio of 2.0 to 1, waive the prohibition of partial payment of the Loan, and to extend the maturity date by an additional year to August 10, 2008, provided that, among other conditions, the Debtor paid certain fees and made a payment of $340,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

g.      The Debtor notified Special Servicer of its inability to repay the Loan at its August 10, 2008, maturity. Accordingly, on August 11, 2008, Special Servicer agreed to a two-month extension, provided that, among other conditions, the Debtor paid certain fees and made a payment to Midland of $250,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

h.      Debtor again notified Special Servicer of its inability to repay the Loan at its December 10, 2008, maturity. On December 4, 2008, Special Servicer agreed to another extension to April 10, 2009, provided that, among other conditions, the Debtor paid certain

fees and made a payment of $235,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

**Debtor Defaults in April 2009**

i.       On April 14, 2009, Special Servicer sent the Debtor a reservation of rights letter notifying the Debtor that a default had occurred because the Debtor had failed to pay the Loan on April 10, 2009, the then existing maturity date.

**The Parties Agree to a Forbearance; Debtor begins Paying Excess Cash Flow to Lender**

j.       On April 17, 2009, Lender, the Debtor, and the two guarantors (B. Howard Bulloch and David Gaffin) entered into a Pre-Negotiation Agreement, wherein the parties agreed on certain terms regarding discussions they were conducting related to the Loan. As a result, the parties agreed to extend the maturity date to October 10, 2009, provided that, among other conditions, (a) the Debtor paid certain fees, (b) interest began to accrue on the Loan at a rate of LIBOR plus 400 basis points, with a LIBOR floor of 2%, (c) the Debtor instituted a hard cash management system whereby all of the excess cash flow would be held by Lender as additional collateral, which arrangement was memorialized by that certain Blocked Account Control Agreement dated June 25, 2009 by and between Debtor and Lender (the "Blocked Account Control Agreement"), and (d) Debtor was prohibited from making distributions to its members or the guarantors.

k.       The Debtor notified Special Servicer of its inability to repay the Loan at its October 10, 2009, maturity. Accordingly, in December 2009, Special Servicer agreed to a short term extension to July 10, 2010, provided that, among other conditions, (a) the Debtor paid certain fees, (b) interest continued to accrue on the Loan at a rate of LIBOR plus 400 basis points, with a LIBOR floor of 2%, (c) the Loan hard cash management system contemplated above and memorialized with the Blocked Account Control Agreement continued, with excess cash flow to be applied to reduce the then outstanding principal balance of the Loan; and (d) the Debtor was prohibited from making distributions to its members or any guarantor.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Tab stops: 3.25", Centered + Not at 3"

l.      On July 12, 2010, Special Servicer sent the Debtor a reservation of rights letter notifying the Debtor that (A) a default had occurred because the Debtor had failed to pay the outstanding principal amount on July 10, 2010, the then existing maturity date, and (B) Lender had a right to exercise all of its rights and remedies under the Loan Documents. (*Id.* at ¶ 16).

m.      Pursuant to these agreements, a lock box account was established at U.S. Bank National Association (the "Lockbox"). Starting in July 2009, all rents from the Property were deposited in the Lockbox. From such deposited funds, the Lender deducted on a monthly basis the following payments: (i) amounts due for the tax and insurance reserve; (ii) monthly interest due; and (iii) $15,000 toward the Loan's principal balance. Funds in the Lockbox were then released to the Debtor to pay its operating expenses. Subsequently, any excess cash was swept by Lender and applied toward the Loan's principal balance. The Debtor unilaterally ceased making deposits in the Lockbox after November 9, 2010, and has made no further deposits in violation of the Loan Documents. The Debtor made principal and interest payments on December 9, 2010, and January 9, 2011, but has made no further payments to the Lender. As a result, to ensure that taxes were paid current on the property, on February 25, 2011 Lender was forced to advance its own funds for taxes.

n.      According to the Lender, the outstanding balance of the Loan as of the Petition Date was $3,078,190.76, comprised of principal in the amount of $2,895,322.16, monthly interest in the amount of $57,914.05, and default interest in the amount of $124,954.55.

**Lender Begins Foreclosure Proceedings in January 2011**

o.      On January 14, 2011, Lender initiated foreclosure proceedings on the Property.

p.      In accordance with Nevada law, the foreclosure sale for the Property was scheduled for May 11, 2011.

6.      *The Gonzales Action*

On January 13, 2011, Gonzales brought an action commencing the litigation in the Eighth Judicial District Court for the State of Nevada (the "Gonzales Action"). The defendants are:

DESERT LAND, LLC, a Nevada limited liability company;

DESERT OASIS APARTMENTS, LLC, a Nevada limited liability company;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

DESERT OASIS INVESTMENTS, LLC, a Nevada limited liability company;

SPECIALTY TRUST, a Maryland corporation;

SPECIALTY STRATEGIC FINANCING FUND, LP, a Delaware limited partnership;

EAGLE MORTGAGE COMPANY;  and

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF J. P.

        MORGAN CHASE COMMERCIAL MORGAN SECURITIES CORP.,

        COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004

        FL1; SPECIALTY MORTGAGE CORP., a Nevada corporation.

    By his Complaint, Gonzales seeks to enforce the $10 Million Parcel "A" Transfer Fee against Desert Land and Desert Oasis, asserting that these parties made a qualifying land transfer (exercise of the FLT Option) under the terms of the settlement agreement, which would entitle Gonzales to payment of the Parcel "A" Transfer Fee. In addition to filing a breach of contract action, to enforce payment of the Parcel "A" Transfer Fee Gonzales is seeking to treat his Parcel "A" Transfer Fee right as a lien against the property. Accordingly, Gonzales has named lenders in this action who hold interests against the Parcel "A" properties, and is seeking a declaration of priority and foreclosure against the Parcel "A" properties.

    Mr. Gonzales alleges in his litigation that the obligation to pay the Parcel A Transfer Fee has been triggered. He alleges that the payment was triggered by the transfer of an option to Desert Oasis Investments, LLC. Mr. Gonzales also asserts upon information and belief, to be added as amendment to the current complaint, that payment of the Parcel A Transfer Fee also has have been triggered by a prior or existing lease of the property or will be triggered by a pending or contemplated lease.

    On February 23, 2011, the Gonzales Action was removed to Bankruptcy Court by Specialty Trust, Inc., a debtor and debtor in possession in its own Chapter 11 case pending in the United States Bankruptcy Court for the District of Nevada as Case No. BK-N-10-51432-GWZ. On May 11, 2011, Judge Zive heard Desert Land's and Desert Oasis Investment's Motion for Withdrawal of Reference Pursuant to 28 U.S.C. §157(d).  On June 13, 2011, Judge Zive's Order and Recommendation was entered recommending withdrawal of the Gonzales Action to District Court. The Gonzales Action should now be pending in the United States District Court for the District of Nevada.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: .

Deleted: is

Deleted: as Case No. _____

Formatted: Tab stops:  3.25", Centered + Not at 3"

Wells Fargo Bank has filed a Motion to Dismiss the Gonzales Action on the grounds that Gonzales, as a matter of law, does not have a lien on Parcel A. Wells Fargo Bank argues:

Here, the intentions of the parties are clearly stated. Per the terms of the Settlement Agreement, Plaintiff was solely granted a right to a Parcel "A" Transfer Fee upon a qualifying land transfer associated with the Parcel "A" property. As already noted, the Parcel "A" Transfer Fee clause does not use any words conveying or transferring an actual title interest in the Parcel "A" property. Rather, the clear terms of the Settlement Agreement provide that the Parcel "A" Transfer Fee **shall not constitute a mortgage, deed of trust, or other lien on Parcel A"**. *See supra.* (emphasis added). Because there was no intent by the parties to create a lien, this Court should not grant Plaintiff's Parcel "A" Transfer Fee any lien consideration.

Desert Land, Desert Oasis Investments and the Debtor intend to join in this motion and support this argument. It is expected that the Gonzales Action will result in a determination that Gonzales does not have a lien on the Property of the Debtor.

Desert Land, Desert Oasis Investments and the Debtor would also argue that since Gonzales did not obtain a stay pending appeal, the loans made in between the Bankruptcy Court's Order Confirming the Second Amended Plan of Reorganization and the BAP Decision by the BAP Court, are protected by the provisions of Bankruptcy Code §364(e) which provides:

(e) The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

Desert Land, Desert Oasis Investments and the Debtor intend to prosecute counterclaims against Gonzales for slander of title and other claims.

Pending the outcome of the Gonzales Action, the Debtor does not have clear title to the Property.

Gonzales states his contentions with regard to the Gonzales Action as follows:

a. Gonzales' complaint does not assert that there is a lien, but seeks a judicial determination to confirm that his rights regarding the Parcel A Transfer Fee constitutes part of a right or an interest given in Parcel A.

b. A notice of *lis pendens* was not recorded in regards to Gonzales' litigation.

c. Pursuant to the terms of Desert Land's confirmed plan, any sale, transfer, or other conveyance of all, or any part of Parcel A (with certain specified exceptions), which occurred concerning any portion of Parcel A, triggers Gonzales' rights in the entirety of Parcel A, including that portion of Parcel A owned by Desert Oasis.

d. Gonzales has asserted the occurrence of a trigger event in his complaint, and, further, Desert Oasis is aware of (1) a lease made on a portion of Parcel A owned by Desert Land, and (2) Desert Oasis is aware that there are other existing and/or future leases to be made upon Desert Land's portion of Parcel A, which Gonzales asserts are, or would be, additional trigger events.

7.    *Reduction of the Loan Balance*

The principal balance of the Loan was, originally, $5,200,000. The principal balance on the Loan has been substantially reduced since the Loan by principal reduction payments made on the following dates:

| | |
|---|---|
| August 2, 2006 | $1,025,000 |
| July 30, 2007 | 340,000 |
| August 11, 2008 | 250,000 |
| December 4, 2008 | 235,000 |
| June 1, 2009 to January, 2011 | 15,000/month |

The principal balance now due is approximately $2,895,322. Interest and fees accrued, pre-petition, were approximately $247,536. Some of these fees and costs may be disputed.

**B.    Insiders of the Debtor**

In a limited liability company, the equity interest holders are the members. Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code") include the members and the manager. The managers of the Debtor are as follows:

| | |
|---|---|
| David Gaffin | Manager |

The owners of the Debtor are:

| | |
|---|---|
| Compass Investments, LLC | 99.5% |
| Bruce E. Bulloch | 0.5% |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Compass Investments, LLC is managed by Howard Bulloch and David Gaffin.

**C.    Property Value**

The Debtor estimates the Property is worth approximately $6,500,000 based upon its cash flow as an apartment complex.  In addition, the Property is part of an assemblage of adjacent real estate with frontage on Las Vegas Boulevard which could be developed as a hotel/resort/casino. The value of the Property for this purpose may be $12 million to $24 million.

**D.    Management of the Debtor Before and During the Bankruptcy**

The  person in control of the Debtor is David Gaffin.

**E.    Events Leading to Chapter 11 Filing**

The Loan made to Desert Oasis by J P Morgan Chase Bank was originally due in July, 2006. The parties to the Loan negotiated extensions on August 2, 2006, July 30, 2007, August 11, 2008, December 4, 2008, June 1, 2009 and December 4, 2009.  Pursuant to these agreements, the balance of the Loan became due July 10, 2010.  Despite good faith attempts by both parties, no further extension of the Loan was negotiated.  In November, 2010, the Debtor ceased depositing all its rental income in a lock-box controlled by the Bank. The Debtor did make principal and interest payments through January, 2011. On January 14, 2011, Wells Fargo had a Notice of Default & Election to Sell filed.  On April 18, 2011, Wells Fargo had filed and served an notice that a sale under the power of sale contained in the deed of trust would be held on May 11, 2011.  On May 10, 2011, the Debtor filed its petition.

**F.    During the Bankruptcy Case**

Since the filing of the debtor's bankruptcy case, the debtor has employed  Schwartzer & McPherson Law Firm as its bankruptcy counsel.  The fees of Schwartzer & McPherson will be based, generally, on the time spent by counsel.

The Debtor has sought and obtained authority to use the Bank's cash collateral for normal operations and maintenance of the Property. Under the cash collateral order the Debtor is paying the Bank monthly interest at the non-default rate of 6% per annum.

The Debtor has sought and obtained authority to honor pre-petition tenant deposits.

**G.    Projected Recovery of Avoidable Transfers**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Tab stops:  3.25", Centered + Not at 3"

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**H.     Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

The Debtor does intend to pursue its counterclaim against Tom Gonzales in the action pending in the Gonzales Action.

**I.     Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are as follow:

| | |
|---|---|
| Real Property | $ 6,500,000.00 |
| Counterclaim Against Gonzales | 10,000,000.00[11] |
| Property & Equipment | 236,872.56 |
| Monies owed to Debtor | $ 1,330,369.69 |
| Total Assets | $ 18,067,242.25 |

The identity and balance owed of Debtor's debts are as follows:

| | |
|---|---|
| Wells Fargo Bank | $ 3,076,716.23 |
| Tenant Security Deposits | $    17,215.00 |
| Insider Unsecured Claims | $ 7,169,734.61 |
| Gonzales Claim | $10,000,000.00[12] |
| Non-Insider Unsecured Creditors | $    27,650.17 |

11. Disputed and unliquidated.

12. Not yet due or payable and also an obligation of affiliates of the Debtor.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

Formatted: Tab stops: 3.25", Centered + Not at 3"

| | | |
|---|---|---|
| Total Unsecured Claims | $17,197,384.78 | |
| Total Debts | $20,291,316.01 | |
| Net Equity | $ (2,224,073.77) | |

The Debtor's post-petition operations, as shown by the Monthly Operating Reports filed with the Bankruptcy Court, consist of the rent paid by the Tenants, the operating expenses and costs paid by the Debtor, the interest payments paid by the Debtor to Wells Fargo Bank. No other funds have been received or disbursed since the filing of the petition in this case. The Debtor's operations produce a positive cash flow, before interest, amortization and depreciation of approximately $34,000 per month.

Attached as Exhibit "F", is a schedule showing the cash flow of the apartments for the past 4½ years and a projection for the next 10 years. The projections are the Debtor's best estimate of future cash flow based upon its past and current occupancy, rents and expenses. The projections show that the Debtor should have no problem in making the monthly payments required by the Plan.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.    Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has placed these claims in Class 1.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: and

Formatted: Tab stops: 3.25", Centered + Not at 3"

1.   <u>Class 1</u>.    *Administrative Expenses and Priority Claims*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

Tenant security deposits are entitled to priority under §507(a)(7).  The Bankruptcy Court has approved honoring all tenant deposits. Debtor intends to pay Tenant security deposits in the ordinary course of business, that is, when the tenant is entitled to return of his or her security deposit. Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it be paid on the effective date of the Plan

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Monthly Expenses Arising in the Ordinary Course of Business After the Petition Date | $50,000 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | $50,000 | Paid in full on the effective date of the Plan (or when approved by the Court) in full from the pre-petition retainer received from Debtor. |
| Office of the U.S. Trustee Fees | $1,625 | Paid in full on the effective date of the Plan or when due if later. |
| TOTAL | $101,625 | |

The Debtor is unaware of any Priority Tax Claims.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Indent: First line: 0.5"

Deleted: ¶

Deleted: date of the Plan.¶

Deleted: ¶

Deleted: ¶
¶
¶
¶

Formatted: Line spacing:  Exactly 24 pt

Formatted: Tab stops: 3.25", Centered + Not at 3"

2.    Class 2.    *Bank Secured Claim*

| Description | Impairment | Treatment |
|---|---|---|
| *Secured claim of the Bank*<br><br>Collateral description : the Property<br><br>Allowed Secured Amount: $3,100,000 (estimated)<br><br>Priority of lien: 1st priority | impaired | Class 2 is impaired by this Plan. The Bank will be paid its pre-petition claim in full, including principal, accrued interest and costs and reasonable attorneys' fees. This amount shall be paid with interest at the rate of 4.5% per annum from the Petition Date. Beginning on 1st day of the 1st month following the Effective Date, the Bank shall be paid an amount necessary to amortize its claim over 25 years together with interest. In addition payments for insurance and real estate taxes will be escrowed. The principal and interest payment would be approximately $17,250 per month. Payment would be made from the rent collected from the Tenants. The balance of the Claim shall be all due and payable in 10 years from the Effective Date. This balloon payment at the end of 10 years would be approximately $2,253,000. This balance will be paid from the proceeds of sale or refinancing or from a capital investment made by the owners of the equity interest. There will be no pre-payment penalty. The loan will be assumable. The Bank shall retain its lien on the Property with the same priority as it held on the date of the Debtor's Petition. |

Deleted: 18

Deleted: 300

Deleted: an

Deleted: first priority

Formatted: Tab stops: 3.25", Centered + Not at 3"

SCHWARTZER & McPHERSON LAW FIRM<br>2850 South Jones Boulevard, Suite 1<br>Las Vegas, Nevada 89146-5308<br>Tel (702) 228-7590 · Fax: (702) 892-0122

3.    Class 3.    *Gonzales Claim*

| Description | Impairment | Treatment |
|---|---|---|
| Class 3 – Tom Gonzales ($10,000,000) | unimpaired | Class 3 is unimpaired by this Plan. Tom Gonzales will be paid the Parcel A Transfer Fee pursuant to the terms of the Desert Land Plan of Reorganization. That payment is due when, and only when, there is a Parcel A Transfer as defined in that plan. This claim is unsecured. This claim is subject to setoffs and counterclaims by the Debtor. |

4.    Class 4.    *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 4 which contain general unsecured claims against the Debtor:

| Description | Impairment | Treatment |
|---|---|---|
| Class 4 - General Unsecured Creditors (approximately, $7,197,000) | impaired | Class 4 is impaired by this Plan. Non-Insider General Unsecured Creditors will be paid in full, without interest from the rent collected from the Tenant. Beginning on 1st day of the 1st month following the Effective Date, Class 4 will be paid $3,000 per month pro rata for approximately 12 months. Desert Land, LLC, Citation Financial, LLC and Compass Investments Holdings, LLC (holding claims of approximately $7,161,000) have agreed to subordinate their claims to the claims of other unsecured creditors and will be paid only after all other unsecured creditors are paid in full and reasonable reserves for maintenance and repair of the Property have been funded. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: ¶

Formatted: Tab stops: 3.25", Centered + Not at 3"

5.    <u>Class 5</u>.    *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("LLC"), the equity interest holders are the members. The following chart sets forth the Plan's proposed treatment of the one class of equity interest holders:

| Description | Impairment | Treatment |
|---|---|---|
| Class 5- Equity Security Holders of the Debtor | unimpaired | Class 5 is unimpaired by this Plan. Equity Security Holders (the members of the Debtor) will retain their equity interest in the Debtor. |

**C.    Means of Implementing the Plan**

1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the rents paid by the Tenants and by sale or refinancing at or before the end of 10 years. The Debtor asserts that there is substantial equity in the Property in excess of the debt to the Bank. In normal times, the Property could easily be refinanced. However, due to the alleged lien of Gonzales and the current economic situation in which there are almost no loans for commercial property in Las Vegas available, makes immediate refinancing unavailable.  The Gonzales lien will be eliminated by a final order in the Gonzales Action and, it is reasonable to expect that competition for and availability of commercial lending for apartment complexes will return at some time within the next ten years.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor shall be David Gaffin, the current manager.  The Manager will be compensated from funds in excess of the required payments under this plan. For the foreseeable future, on-site management will be continue to handled by West Corp Management Group.

**D.    Risk Factors**

The proposed Plan has the following risks:

1.    Business Risk-There is an inherent risk in all real estate in that the value of the property is, in part, dependent on general economic conditions in the community. In the unlikely event

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Formatted: Line spacing:  Exactly 8 pt

Deleted: Tenant

Deleted:  make

Deleted:  in

Formatted: Tab stops:  3.25", Centered + Not at 3"

that the value of the property decreases below $3,100,000 over the next ten years it may be impossible for the Debtor to refinance the Property and pay off the loans as required by the Plan.

**Formatted:** Line spacing: Exactly 24 pt

2.    Tenant Risk- There is an inherent risk in that the current level of tenant occupancy and tenant rents, although expected to remain the same in the future, could decline in the future. In the event of a substantial reduction in occupancy or rent levels, the Debtor will not have the ability to make the payments required by the Plan.

3.    Refinancing Risk-The current market does not provide opportunities for refinancing Las Vegas properties at almost any rate.  It is unlikely that this condition will continue. With the elimination of the alleged Gonzales lien and the continued amortization of the Loan, it is more likely than not that refinancing will become available.

These long-term risks are shared by the Bank and Equity Security Holders In the event of the failure of the Debtor to make the payments to the Bank required by the Plan, the Bank would have the right to foreclose on the Property.

**Deleted:** .

**E.    Executory Contracts and Unexpired Leases**

The Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Tenant leases will be assumed. Other  executory contracts and unexpired leases related to the operation of the Property may be assumed. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

**F.    Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan:

1.    Tax consequences to the Debtor of the Plan:

a.    Under the Internal Revenue Code, the rent paid by the Tenants is considered income. Interest paid to the Bank is deductible.  In addition, depreciation of the Property is deductible. The Debtor expects to incur minimal income.

**Formatted:** Tab stops:  3.25", Centered + Not at 3"

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

b.      The Debtor is not an income tax-paying entity.  The Debtor's income and/or losses are passed through to its equity holders.

**IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A.      Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that  the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2 and 4 are impaired and that holders of claims and interests in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that classes 1, 3 and 5 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Deleted: ¶

Formatted: Indent: Left:  0.5", Line spacing: Exactly 30 pt

Formatted: Line spacing:  Exactly 24 pt

Formatted: Indent: First line:  1"

Formatted: Tab stops:  3.25", Centered + Not at 3"

vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or

equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case is August 9, 2011 (for non-governmental creditors) and November 8, 2011 (for government units).*

**2.    *What Is an Impaired Claim or Impaired Equity Interest?***

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**3.    *Who is Not Entitled to Vote***

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- tenants because they are holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.*

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

[Deleted: ¶]

[Formatted: Line spacing: Exactly 24 pt]

[Formatted: Line spacing: Exactly 24 pt]

[Formatted: Tab stops: 3.25", Centered + Not at 3"]

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed

by "cram down" on non-accepting classes, as discussed later in Section [B.2].

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of

more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the

Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the

class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount

of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless

confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the

Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The

Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the

requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code,

does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not

voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your***

***claim or equity interest, as the variations on this general rule are numerous and complex.***

**C.    Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do

not accept the Plan will receive at least as much under the Plan as such claim and equity interest

holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure

Statement as **Exhibit "B."**

In a liquidation, the Property would be foreclosed upon by the Bank, the successful bidder at

the foreclosure sale would obtain title to the Property free and clear of subordinate liens and, possibly,

the Lease. Gonzales and other the unsecured creditors would receive a dividend of approximately

12%. Members of the Debtor would receive nothing.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**D.      Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

    1.      *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. If necessary, the members of the Debtor will contribute the funds necessary to pay Administrative Claims and Priority Claims. The retainer received by Debtor's counsel should be sufficient to pay Debtor's counsel's fees and costs.

    2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. In this case, existing monthly rent payments are more than sufficient to fund the monthly payments required by the Plan. A schedule of the Debtor's past cash flow and projected cash flow is attached as Exhibit "F". These projections show that based on past cash flow the projected cash flow will be more than sufficient to make the payments required by the Plan.

The Gonzales claim is for the Parcel "A" Transfer Fee as described in the Order Confirming the Desert Land Confirmation Order and section II.A above. This claim is due when a portion of Parcel "A" is sold. The obligation for the Parcel "A" Transfer Fee is shared with Desert Land, LLC. Desert Land owns 7 adjacent parcels of land worth $30,000,000 to $60,000,000. At this time, none of this land is subject to secured debt. Desert Land would likely be able to sell land or obtain financing to pay the Gonzales claim.

3.    *Confirmation Requirements*

The Plan is Fair and Equitable to the Bank

The Plan satisfies the first test in § 1129(b)(2)(A). Under the Plan, the Bank retains its lien. The Bank has objected to the Plan being Fair and Equitable because the Gonzales lien question is not decided prior to confirmation. That is not a requirement of the statute. Bankruptcy Code §1129(b)(2)(A)(i)(I) only requires that the "creditor *retains* the lien securing its claim". The statute does not require a debtor to guarantee, improve or increase the priority of a creditor's lien. Both the Debtor and the Bank agree that Gonzales' alleged lien must be inferior to the Bank's lien because (a) Gonzales has no right to a lien and (b) because the Bank's lien was given pursuant to an order of the bankruptcy court and (i) the appeal from that order was taken and (ii) no stay pending appeal was granted. See Bankruptcy Code §364(e).

The Bank Will Receive The Indubitable Equivalent Of Its Claim

The Bank is entitled to the indubitable equivalent of its claim. 11 U.S.C. § 361(3). That can be provided by interest being paid on the claim. The Plan provides the Bank with a stream of monthly payments as required by subsection II of §1129(b)(2)(A)(ii). The "value" of the stream of payments requires payment of an appropriate rate of interest, considering the terms, quality of the security and any risk to be borne by the affected creditor.

U.S. government interest rates are lower--actually much lower than just a few weeks ago. The 10-year Treasury Note is now hovering at just under 2.5 % [2.40% as of August 8, 2011]. 2.5% is today's so-called "riskless rate." The proposed rate of 4.5% is a full 2% greater than the return possible from investing in similar maturity Treasury bonds. Percentage-wise, that is 80% higher interest rate in a situation where the Bank has minimal risk of default and there are no marketing costs. The Debtor asserts that 80% higher return is a sufficient risk premium for a 92%-95% occupied apartment building with 127 units and therefore over a 100 diversified sources of revenues for repayment.

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

**B.     Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

**C.     Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. The Debtor intends to file a motion for a final decree as soon as it begins making the payments to the secured and unsecured creditors under the Plan. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted,

DESERT OASIS APARTMENTS, LLC

By: _____
        David Gaffin, Manager

The Plan Proponent

Prepared by:

SCHWARTZER & McPHERSON LAW FIRM

By: _____
        Lenard E. Schwartzer, Esq.
*Counsel for the Debtor and Debtor in Possession*
*And Plan Proponent*

---

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

---

Formatted: Indent: Left:  0.5", Line spacing: Exactly 30 pt

Deleted: By:  /s/   David Gaffin _____¶

Deleted: By:  /s/   Lenard E. Schwartzer ____¶

Formatted: Tab stops:  3.25", Centered + Not at  3"

**EXHIBITS**

**Exhibit A** – Proposed Plan of Reorganization
**Exhibit B** – Liquidation Analysis
**Exhibit C** – Confirmation Order
**Exhibit D** – BAP Decision
**Exhibit E** – 9th Circuit Decision
**Exhibit F** – Cash Flow History and Projections

Formatted: Font: Not Bold

Formatted: Tab stops: 3.25", Centered + Not at 3"

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122



**Exhibit A**

**Copy of Proposed Plan of Reorganization**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Formatted:** Tab stops: 3.25", Centered + Not at 3"



**Exhibit B**

**Liquidation Analysis**

*Plan Proponent's Estimated Liquidation Value*
*of Assets (foreclosure by the Bank)*

| | |
|---|---|
| **Assets** | |
| a.   Cash on hand | $   100,000 |
| b.   Real Property (based upon Appraisal by RCS Appraisal, Inc.) less 10% discount for foreclosure or Chapter 7 bankruptcy sale[1] | $ 5,400,000 |
| *Total Assets at Liquidation Value* | $ 5,500,000 |
| **Less:** | |
| Costs of Sale (estimated at 10% of sales price) | $    54,000 |
| **Less:** | |
| Secured Claim of Bank  ($3,100,000) | $ 3,100,000 |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $  150,000 |
| **Less:** | |
| Chapter 11 administrative expenses (not previously paid by retainer) | $ 0 |
| **Less:** | |
| Priority claims, excluding administrative expense claims | $ 0 |
| Balance for unsecured claims | 2,196,000 |

*Percentage of Claims Which Unsecured Creditors [2]*
*Would Receive Or Retain in a Chapter 7 Liquidation:*     13%

*Percentage of Claims Which Non-Insider Unsecured*
*Creditors Will Receive or Retain under the Plan:*     100%

_____

1. The RCS Appraisal, Inc market value of $6,000,000 requires an exposure period of approximately 12 months.

2. Includes $10,000,000 claim of Gonzales which would be due upon sale of the Property and $7,197,000 claims of insiders which will be subordinated under the Plan.

*Deleted:* 0

*Deleted:* 400

*Deleted:* 096

*Deleted:* 29

*Deleted:* ¹

*Deleted:* ²
*Deleted:* - 27 -
*Formatted:* Left

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit C**

**CONFIRMATION ORDER IN DESERT LAND CASE**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Deleted:** - 27 -

**Formatted:** Left



**Exhibit D**

**BAP DECISION**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Deleted: - 27 -

Formatted: Left

**Exhibit E**

**9th CIRCUIT DECISION**

Deleted: - 27 -

Formatted: Left

**Exhibit F**

Cash Flow History and Projections

Formatted: Centered, Indent: First line: 0"

Deleted: - 27 -

Formatted: Left

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

# EXHIBIT "3"

Desert Oasis Apartments LLC

| | 2011 Projected | 2012 Projected | 2013 Projected | 2014 Projected | 2015 Projected | 2016 Projected | 2017 Projected | 2018 Projected | 2019 Projected | 2020 Projected | 2021 Projected |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Rental Income** | | | | | | | | | | | |
| Market Rent | 1,162,755 | 1,161,600 | 1,180,800 | 980,000 | 997,520 | 1,053,240 | 1,065,600 | 1,096,320 | 1,111,680 | 1,127,040 | 1,142,400 | 1,157,760 | 1,173,120 | 1,188,480 |
| Gain (Loss) To Lease | (279) | 1,556 | (46,200) | 60,156 | 33,117 | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,499) | (1,498) | (1,497) |
| Physical Occupancy % | 93.4% | 84.9% | 83.3% | 91.9% | 95.6% | 96.0% | 95.0% | 95.0% | 96.0% | 96.0% | 96.0% | 95.0% | 94.0% | 95.0% |

Total Gross Potential Rent
Physical Vacancy Loss
Bad Debt - Skips and Evicts
Less: Net Rent Collected
Month To Month Fees
Non Revenue Units - Models
Concessions - HUA
Rent Discounts
Prepaid (Delinquent)
Resident Related Income
Ancillary Income
Utility Reimbursement

**Total Revenue**

**Operating Expenses**
Management Fee
Administrative Expenses
Payroll and Benefits
Maintenance Expenses
Utilities
Physical

**Total Operating Expenses**
Taxes
Insurance

**Total Expenses**

Net Operating Income
Capital Improvements
Non-Recurring Costs

Total Cash Flow Before Debt Service
Debt Service
Unsecured Creditor Payment
Total Net Cash Flow

Partnership Expenses

**Total Net Income**

# EXHIBIT "4"

Lenard E. Schwartzer, Esq.
Nevada Bar No. 0399
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
Email: bkfilings@s-mlaw.com
*Attorneys for Debtor and Debtor In Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-11-17208-BAM |
| | Chapter 11 |
| **DESERT OASIS APARTMENTS, LLC,** | |
| Debtor. | Hearing Date:    August 23, 2011 |
| | Hearing Time:    10:00 a.m. |

### ORDER: (1) APPROVING ADEQUACY OF DISCLOSURES IN PROPOSED DISCLOSURE STATEMENT AND (2) SETTING A CONFIRMATION HEARING AND DEADLINES FOR BALLOTING AND OPPOSITIONS TO CONFIRMATION

The Motion For Order: (1) Approving Adequacy Of Disclosures In Proposed Disclosure Statement, And (2) Setting a Confirmation Hearing, Record Date and Deadlines For Balloting And Opposition to Confirmation (the "Motion") having come before this court after notice as required by law; Debtor Desert Oasis Apartments, LLC appearing by and through its counsel Lenard E. Schwartzer, Esq. of the Schwartzer & McPherson Law Firm, other appearances having been noted on the record; the Court having considered the papers on file and the arguments made by counsel, the Amended Plan of Reorganization [Docket No. __] (the "Plan") and the Disclosure Statement to Amended Plan of Reorganization [Docket No. __] (the "Disclosure

1    Statement") and making its findings on the record, it is

2          **ORDERED** as followed:

3                a.    the Disclosure Statement is approved;

4                b.    the confirmation hearing is set for _____ **at** _____;

5                c.    a ballot substantially in the form of Official Form No. 14 is authorized;

6                d.    a copy of the Disclosure Statement (together with the Plan attached

7    thereto), a ballot, this Order and a Notice of Hearing shall be mailed to all creditors within 10

8    days from the entry of this order;

9                e.    the deadline for filing objections to confirmation shall be

10   _____ (21 days before the Confirmation Hearing);

11               f.    the deadline for filing of ballots shall be _____ (14 days

12   before the Confirmation Hearing);

13               g.    the deadline for filing a reply memorandum in support of confirmation

14   shall be _____ (7 days before the Confirmation Hearing); and

15               h.    the deadline for filing the ballot summary shall be

16   _____ (7 days before the Confirmation Hearing);

17               i.    the record date for claims and equity interests is the date of the hearing of

18   this motion: August 23, 2011.

19   Prepared by:                              Approved/Disapproved

20    _/s/  Lenard E. Schwartzer_____       _____
21   Lenard E. Schwartzer, Esq.               Jeffrey S. Rugg, Esq.
     SCHWARTZER & MCPHERSON LAW FIRM          Julia Brand, Esq.
22   2850 South Jones Boulevard, Suite 1      BROWNSTEIN HYATT FARBER
     Las Vegas, Nevada 89146-5308             SCHRECK, LLP
23   *Attorneys for Debtors and Debtors in*   100 North City Parkway, Suite 1600
     *Possession*                             Las Vegas, NV 89106-4614
24                                            *Attorneys for CT Investment Management*
25                                            *Co., LLC in its capacity as Special Servicer*
                                             *to Wells Fargo Bank, N.A.*
26

27

28

1    Approved/Disapproved

2    _____

3    Louis M. Bubala III, Esq.
     ARMSTRONG TEASDALE LLP
4    50 West Liberty Street, Suite 950
     Reno, NV 89501
5    *Counsel for Tom Gonzales*

6    In accordance with LR 9021, counsel submitting this document certifies that the order accurately
7    reflects the court's ruling and that:
     _____ The court has waived the requirement set forth in LR 9021 (b)(1).
8    _____ No party appeared at the hearing or filed an objection to the motion.
     __X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing,
9    and any unrepresented parties who appeared at the hearing, and each has approved or
     disapproved the order, or failed to respond, as indicated above.
10   _____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order
11   with the motion pursuant to LR 9014(g), and that no party has objected to the form or
     content of the order.
12                                     # # #

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Desert Oasis Apartments/ ORDER APPROVING DISCLOSURE STATEMENT