Jeffrey S. Rugg, Esq., Bar No. 10978
jrugg@bhfs.com
Julia W. Brand, Esq. (pro hac vice)
jbrand@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: (702) 382-2101
Facsimile: (702) 382-8135

Attorneys for Plaintiff

Date Filed: August 19, 2011

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

Case No. BK-S-11-17208-BAM

In re

DESERT OASIS APARTMENTS, LLC

Chapter 11

Adversary No. _____

CT INVESTMENT MANAGEMENT CO., LLC as Special Servicer to WELLS FARGO BANK, N.A., a national banking association, as trustee for J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., a Delaware corporation,

Plaintiff.

v.

TOM GONZALES, an individual, and DESERT OASIS, LLC, a Nevada limited liability company.

Defendant.

**COMPLAINT FOR:**

1) DETERMINATION OF EXTENT, VALIDITY AND PRIORITY OF LIENS; AND

2) DECLARATORY RELIEF

Plaintiff CT Investment Management Co., LLC ("Plaintiff") as Special Servicer to Wells Fargo Bank, N.A. a national banking association, as trustee for J.P. Morgan Chase Commercial Mortgage Securities Corp., a Delaware corporation, by and through its undersigned counsel of record, respectfully alleges the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334.

2. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). To the extent any claim for relief contained herein is determined not to be a core proceeding, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4. Plaintiff holds a properly perfected lien in the Desert Oasis Property (defined in paragraph 8 below) that is the subject of this action, which secures repayment of the obligation owed to Plaintiff by Desert Oasis Apartments, LLC.

5. Defendant, Desert Oasis Apartments, LLC, ("Desert Oasis") a Nevada limited liability company is the debtor in the bankruptcy case in which this adversary proceeding is filed and is the owner of the Desert Oasis Property.

6. Defendant Tom Gonzales ("Gonzales") is an individual who asserts an interest in the Desert Oasis Property.

## COMMON ALLEGATIONS

### Original Loan to Defendant Desert Oasis

7. On July 21, 2003, J.P. Morgan Chase Commercial Mortgage Securities Corp ("JP Morgan") made a loan to Defendant Desert Oasis, in the principal amount of $5,200,000 (the "Loan"), as evidenced by the following documents (collectively, the "Loan Documents"): (i) that certain Promissory Note dated as of July 21, 2003, executed by Desert Oasis in favor of JP Morgan (the "Note"); (ii) that certain Deed of Trust and Security Agreement dated as of July 21, 2003, between Desert Oasis and JP Morgan (the "Deed of Trust"); (iii) that certain Assignment of Leases and Rents dated as of July 21, 2003, made by Desert Oasis to JP Morgan; (iv) certain UCC Financing Statements filed with the State of Nevada and Clark County, Nevada; (v) and that

certain Guaranty dated as of July 21, 2003, executed by B. Howard Bulloch and David B. Gaffin (Bulloch and Gaffin, together, "Guarantor") for the benefit of JP Morgan.

8. The Loan is secured pursuant to the Deed of Trust, by Defendant Desert Oasis' only real property, the apartment complex located at 5316 Danville Lane, Las Vegas, NV, including the rents generated by the Property (the "Desert Oasis Property").

9. Subsequent to the execution of the Loan Documents, JP Morgan contributed the Loan into a securitized pool of loans forming a Trust Fund administered under that certain Pooling and Servicing Agreement dated as of August 1, 2004 among JP Morgan, as depositor and Midland Loan Services, Inc, as servicer and special servicer, and Wells Fargo Bank, N.A., as Trustee and JP Morgan, as Depositor thereunder caused pass-through certificates to be issued known as "Commercial Mortgage Pass-Through Certificates Series 2004 – FL1" (the "Certificates").

10. The transfer of the Loan from JP Morgan to Wells Fargo is evidenced by the following documents: (i) that certain General Assignment from JP Morgan to Wells Fargo (the; (ii) that certain Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents from JP Morgan to Wells Fargo; and (iii) that certain allonge endorsement dated August 17, 2004 and attached to the Note directing payment to Lender (the "Allonge").

11. Plaintiff was later appointed to replace Midland Loan Services, Inc. as the special servicer for this loan.

12. Plaintiff is authorized to make decisions regarding the Loan including commencing and prosecuting litigation.

### Defaults and Extensions Under the Original Loan

13. The original maturity date for the Loan was August 10, 2006 (the "Original Maturity Date").

14. On August 2, 2006, the Original Maturity Date of the Loan was extended by one year to August 10, 2007, provided that, among other conditions, Defendant Desert Oasis paid

certain fees and made a payment of $1,025,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

15. On July 30, 2007, the maturity date was again extended by an additional year to August 10, 2008, provided that, among other conditions, Defendant Desert Oasis paid certain fees and made a payment of $340,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

16. On August 11, 2008, Defendant Desert Oasis was granted a two-month extension of the maturity date, provided that, among other conditions, Defendant Desert Oasis paid certain fees and made a payment of $250,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

17. On December 4, 2008, Defendant Desert Oasis was granted an extension of the maturity date to April 10, 2009, provided that, among other conditions, Defendant Desert Oasis paid certain fees and made a payment of $235,000, which funds were to be applied to reduce the then currently outstanding principal amount of the Loan.

18. On April 14, 2009, Defendant Desert Oasis was notified that a default had occurred under the Loan by virtue of Defendant Desert Oasis' failure to pay the Loan on April 10, 2009, the then existing maturity date.

19. In April 2009, Defendant Desert Oasis was granted an extension of the maturity date to October 10, 2009, provided that among other conditions, Defendant Desert Oasis paid certain fees, the interest rate of the Loan was modified, all excess cash flow would be held as additional collateral, and distributions to the members of Defendant Desert Oasis or the Guarantors were prohibited.

20. In December 2009, Defendant Desert Oasis was granted a short term extension to July 10, 2010, provided that among other conditions, Defendant Desert Oasis paid certain fees, all excess cash flow would be held as additional collateral; and distributions to the members of Defendant Desert Oasis or the Guarantors were prohibited.

21. On July 12, 2010, Defendant Desert Oasis was notified that a default had occurred under the Loan by virtue of Defendant Desert Oasis' failure to pay the Loan on July 10, 2010, the then existing maturity date.

22. After November 9, 2010, Defendant Desert Oasis unilaterally ceased making deposits into the "lockbox" account created as a result of some of the extensions and Plaintiff was forced to advance funds to ensure that taxes were current on the Desert Oasis Property.

23. Thereafter, Plaintiff was engaged in discussions with Defendant Desert Oasis regarding possible further extensions but no agreement was reached.

24. On January 14, 2011, Plaintiff initiated foreclosure proceedings with regard to the Desert Oasis Property.

25. The Loan has matured and the entire amount of the unpaid Debt (as defined in the Loan Documents), including outstanding principal in the amount of $2,895,322, plus interest, expenses and fees, is due and payable.

26. JPMorgan and Wells Fargo have fulfilled all of their contractual obligations under the Loan and Wells Fargo is the trustee with the right and obligation to enforce the Loan on behalf of the Trust Fund.

### The Gonzales Loan

27. Plaintiff is informed and believes and based thereon alleges that on December 7, 2000, Defendant Gonzales loaned $41.5 million ("Gonzales Loan") to Desert Land, LLC ("Desert Land") and Defendant Desert Oasis to finance Desert Land and Defendant Desert Oasis' acquisition of certain property in Las Vegas, Nevada.

28. Plaintiff is informed and believes and based thereon alleges that the Gonzales Loan was secured by a Deed of Trust recorded against multiple parcels of property owned by Desert Land and the single parcel owned by Defendant Desert Oasis (*i.e.*, the Desert Oasis Property), which parcels were collectively referred to by the parties as Parcel "A".

29. Plaintiff is informed and believes and based thereon alleges that as further consideration for the Gonzales Loan, Desert Land and Defendant Desert Oasis deeded to Defendant Gonzales an undivided five percent (5%) ownership interest in Parcel "A" (including

the Desert Oasis Property), and deeded another undivided half a percent (0.5%) ownership interest to a Barry Fieldman ("Fieldman").

30. Plaintiff is informed and believes and based thereon alleges that as additional security for the Gonzales Loan, Desert Land assigned and granted to Defendant Gonzales a security interest in Desert Lands' unexercised option to purchase four parcels of property near Parcel "A" from FLT Trust ("FLT Option").

31. Plaintiff is informed and believes and based thereon alleges that as additional security for the Gonzales Loan, Desert Ranch, LLC ("Desert Ranch") guaranteed the loan and pledged Defendant Gonzales a thirty-two and a half percent (32.5%) interest in New World, LLC, ("New World") an entity which owned additional parcels of real estate south of Parcel "A", commonly referred to by the parties as Parcels "B", "C", and "D"

### Desert Land and Defendant Desert Oasis' Earlier Bankruptcies

32. On May 31, 2002, Desert Land and Defendant Desert Oasis each filed separate voluntary bankruptcy petitions, which the bankruptcy court ordered jointly administered.

33. At a scheduled hearing on the contested confirmation of the amended plan of reorganization filed by Desert Land and Defendant Desert Oasis in January 2003, Defendant Gonzales, on one hand, and Defendant Desert Oasis, Desert Land, and Desert Ranch, on the other, announced to the bankruptcy court that they had arrived at a settlement, ("Settlement") which was described on the record.

34. Plaintiff is informed and believes and based thereon alleges that, the bankruptcy court suspended confirmation hearing so that the parties could memorialize the Settlement.

35. The Settlement provided that Defendant Gonzales would extinguish his note, reconvey his deed of trust, and release Desert Ranch's guarantee and pledge so that all of the property comprising Parcel "A" would be solely owned by either Desert Land or Defendant Desert Oasis.

36. The Settlement also provided that Defendant Gonzales would receive $10 million if Parcel "A" was sold or transferred after ninety days, $7.5 million if sold within ninety days ("Parcel "A" Transfer Fee").

13334\3\1576473.1                     6

37. The Settlement also provided that Defendant Gonzales and Fieldman would convey to Desert Land and Defendant Desert Oasis their 5.5 percent interest in the properties comprising Parcel "A".

38. The Settlement also provided that Desert Ranch would convey its 65 percent interest in New World to Defendant Gonzales.

39. The Settlement also provided that with regard to the Desert Oasis Property, Defendant Gonzales would subordinate his deed of trust to a loan of up to $5 million so that the Property could be used to secure a loan ("Subordination Provision").

40. The Settlement also provided that Defendant Gonzales would allow his five percent (5%) interest in the Desert Oasis Property to be encumbered by the loan.

41. Plaintiff is informed and believes and based thereon alleges that it was the intent of the parties to the Settlement that that Defendant Desert Oasis, Desert Land, and Desert Ranch would receive Parcel "A" and Defendant Gonzales would receive Parcels "B", "C", and "D" and would receive the Parcel "A" Transfer Fee upon the occurrence of a qualifying land transfer associated with Parcel "A".

42. The parties were unable to document the Settlement in a manner acceptable to all parties.

43. Plaintiff is informed and believes and based thereon alleges that the sole dispute preventing the parties from finalizing the Settlement was Defendant Desert Oasis, Desert Land, and Desert Ranch's demand that the $10 million Parcel "A" Transfer Fee be subordinated to future additional financing obtained by Defendant Desert Oasis and Desert Land, which financing was to be secured by Parcel "A".

44. On April 21, 2003, after numerous hearings on the matter, with the parties still deadlocked, the bankruptcy court declared that an oral settlement agreement already had been reached and entered an order confirming Defendant Desert Oasis, Desert Land, and Desert Ranch's Second Amended Plan of Reorganization ("Confirmation Order"), which incorporated the terms of the Settlement, including the Subordination Provision.

BROWNSTEIN HYATT FARBER SCHRECK LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 382-2101

45.     With respect to the treatment of the Parcel "A" Transfer Fee which had been the sole impediment to finalizing the settlement agreement, the bankruptcy court ruled that Defendant Desert Oasis, Desert Land, and Desert Ranch could subordinate the Parcel "A" Transfer Fee up to $45 million in financing.

### Gonzales' Appeal

46.     On May 5, 2003, Defendant Gonzales filed a notice of appeal of Confirmation Order to be heard by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP Court").

47.     On May 16, 2003, Defendant Gonzales filed with the BAP Court a motion for stay pending appeal, which was denied on May 30, 2003.

48.     On June 30, 2003, Desert Land filed a motion to dismiss the appeal as moot because the plan of reorganization had been substantially consummated, which motion was denied.[1]

49.     On August 25, 2003, Desert Land renewed the motion to dismiss the appeal as moot because transactions had occurred involving third parties which could not be undone, which motion was denied.

50.     The Bankruptcy Appeal Panel of the Ninth Circuit ("BAP Court") issued a final decision on March 31, 2004, affirming in part, reversing in part and modifying the Confirmation Order to provide that the Subordination Provision be expunged.

51.     The BAP Court concluded that the bankruptcy court had erred when it ordered the inclusion of the Subordination Provision as part of the Settlement, which had been incorporated into the Confirmation Order.

52.     The BAP Court quoted the following as the operative subordination language from the Bankruptcy Court Order:

> Gonzales will subordinate his right to the payment of the Parcel [A] Transfer Fee to any such Parcel A Permitted Financing and shall execute, acknowledge and deliver, from time to time, upon no less than 20 day written notice to Gonzales, such subordination agreement(s) as may be reasonably required by title insurer insuring

---

[1] As stated above, the Loan was issued on July 21, 2003.

13334\3\1576473.1                               8

the liens or security interests related to the Permitted Parcel A Financing.

53. Desert Land and Defendant Desert Oasis appealed the BAP Court's decision to the Ninth Circuit Court of Appeals.

54. On October 25, 2005, the Ninth Circuit affirmed the decision of the BAP Court, noting that the BAP Court's "modification of the reorganization plan was an appropriate remedy for the bankruptcy court's abuse of discretion" and that "the BAP did not err by removing the subordination requirement, while preserving the settlement agreement."

### Gonzales' Litigation

55. Prior to the BAP Court's decision, JP Morgan Chase issued the Loan (described above).

56. On January 13, 2011, Defendant Gonzales brought an action commencing litigation in the Eighth Judicial District Court for the State of Nevada ("Gonzales Litigation") against Desert Land, Defendant Desert Oasis, Desert Oasis Investment Company, LLC, Specialty Trust, Specialty Strategic Financing Fund, LP, Eagle Mortgage and Wells Fargo.

57. Among other relief, Defendant Gonzales seeks payment of the $10 million Parcel "A" Transfer Fee, that is allegedly owed pursuant to the terms of the Settlement.

58. Defendant Gonzales' complaint does not assert that he has a lien on the Property, but seeks a judicial determination to confirm that his rights regarding the Parcel "A" Transfer Fee constitutes part of a right or interest given in Parcel "A".

59. Defendant Gonzales seeks to foreclose on among others, the Desert Oasis Property based on the failure to pay the Parcel "A" Transfer Fee alleging that he "has choate, immediate and present rights in Parcel "A" by way of the Parcel "A" Transfer Fee. Such rights and interests secure, protect and/or are enforceable to obtain payment of the sum of $10 million, plus interest thereon."

60. On February 23, 2011 the Gonzales Litigation was removed to the bankruptcy court by Specialty Trust, a debtor and debtor in possession in its own bankruptcy case pending in the United States Bankruptcy Court for the District of Nevada as case no. BK-N-10-51432-GWZ.

61. On May 11, 2011, the bankruptcy court heard a motion for withdrawal of the reference, filed by Defendant Desert Oasis in that bankruptcy proceeding.

62. The bankruptcy court recommended that the reference be withdrawn and the Gonzales Litigation is now pending in the United States District Court for the District of Nevada.

63. Plaintiff filed a motion to dismiss the Gonzales Litigation in the Eighth Judicial District Court but following the transfers noted above, the case has not been assigned to a United States District Court judge and the motion to dismiss is not currently pending.

## FIRST CAUSE OF ACTION

[Declaratory Relief]

64. Plaintiff re-alleges and incorporates by this reference each and every allegation set forth above as thought set forth fully herein.

65. The Desert Oasis Property constitutes property of the bankruptcy estate of Defendant Desert Oasis.

66. Defendant Desert Oasis is the record owner of the Desert Oasis Property.

67. Defendants Gonzales asserts an interest in the Desert Oasis Property..

68. Plaintiff holds a senior perfected lien in the Desert Oasis Property.

69. The Plaintiff is informed and believes and based thereon alleges that no other individual or entity owns or asserts an interest in the Property.

70. The Settlement incorporated as part of the Confirmation Order specifically provides that the Parcel "A" Transfer Fee "shall not constitute a mortgage, deed of trust, or other lien upon Parcel "A" and this portion of the Settlement was not affected by either the BAP Court's or Ninth Circuit's decisions.

71. Defendant Gonzales has claimed that a triggering event requiring payment of the Parcel "A" Transfer Fee has occurred and has sought declaration in the Gonzales Litigation that he is entitled, among other things, to (a) require Desert Land and Desert Oasis to sell and or obtain financing on the Parcel "A" Property to pay the fee and (b) foreclose upon Parcel "A" to enforce payment of the Parcel "A" Transfer Fee.

72. Defendant Gonzales has sought the right to foreclose on Parcel "A," including the Desert Oasis Property as part of the Gonzales Litigation.

73. Plaintiff is entitled to a declaration that Defendant Gonzales does not have a "lien" on the Desert Oasis Property.

74. Plaintiff is entitled to a declaration that any interest Defendant Gonzales may have in the Desert Oasis Property does not limit, impair or otherwise affect Plaintiff's senior lien in the Desert Oasis Property.

75. Plaintiff is entitled to a declaration that any interest that Defendant Gonzales may have in the Desert Oasis Property is limited to the proportionate value of the Desert Oasis Property to the remainder of the property that constitutes Parcel "A."

76. Plaintiff is entitled to a declaration that the automatic stay provided by 11 U.S.C. § 362 applies to the Gonzales Litigation and that actions taken in violation of the automatic stay are *void*.

## SECOND CAUSE OF ACTION

[Determination of Validity, Extent and Priority of Liens in the Desert Oasis Property]

77. Plaintiff re-alleges and incorporates by this reference each and every allegation set forth above as thought set forth fully herein.

78. The Desert Oasis Property constitutes property of the bankruptcy estate of Defendant Desert Oasis.

79. Defendant Desert Oasis is the record owner of the Desert Oasis Property.

80. Defendants Gonzales asserts an interest in the Desert Oasis Property.

81. Plaintiff holds a senior perfected lien in the Desert Oasis Property.

82. The Plaintiff is informed and believes and based thereon alleges that no other individual or entity owns or asserts an interest in the Desert Oasis Property.

83. Plaintiff is entitled to a determination that Defendant Gonzales does not have a valid lien against the Desert Oasis Property.

84. Plaintiff is entitled to a determination that the extent of any interest Gonzales may have in the Desert Oasis Property is junior to and does not otherwise affect the senior perfected lien of Plaintiff.

WHEREFORE, Plaintiff rays for judgment against the Defendants as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

1. For a declaration that Defendant Gonzales does not have a lien on the Desert Oasis Property.

2. For a declaration that any interest Defendant Gonzales may have in the Desert Oasis Property does not limit, impair or otherwise affect Plaintiff's senior lien on the Desert Oasis Property.

85. For a declaration that that any interest that Defendant Gonzales may have in the Desert Oasis Property is limited to the proportionate value of the Desert Oasis Property to the remainder of the property that constitutes Parcel "A."

86. For a declaration that the automatic stay provided by 11 U.S.C. § 362 applies to the Gonzales Litigation and that actions taken in violation of the automatic stay are *void*.

**ON THE SECOND CLAIM FOR RELIEF:**

1. For a determination that Defendant Gonzales does not have a valid lien against the Desert Oasis Property.

2. For a determination that the extent of any interest Gonzales may have in the Desert Oasis Property is junior to and does not otherwise affect the senior perfected lien of Plaintiff.

DATED this 19th day of August, 2011.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

/s/ Jeffrey S. Rugg
Jeffrey S. Rugg, Esq., Bar No. 10978
Julia W. Brand, Esq. (admitted pro hac vice)
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

Attorneys for Plaintiff